MBD ENTERPRISES, INC., d/b/a Love That Yogurt, Plaintiffs-Appellants, v. AMERICAN NATIONAL BANK OF CHICAGO, as Trustee, *et al.*, Defendants-Appellees.

First District (3rd Division) No. 1—91—2528

Opinion filed September 6, 1995.

Allen Ginsberg and Michael LaPat, both of Chicago, for appellants.

Teller, Levit & Silvertrust, of Chicago, for appellee P&D, Ltd.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiffs, MBD Enterprises, Inc., d/b/a Love That Yogurt, and Donald Moust, filed an action for breach of contract and seeking injunctions and specific performance against defendants, American National Bank of Chicago, as the trustee under trust agreement 66662, P&D, Ltd. No. 101, an Illinois limited partnership, and Demetrios Dellaportas, general partner of P&D, Ltd. No. 101, and First National Realty and Development Company, Inc., and Frosty Putter, Inc., an Illinois corporation. The trial court granted summary judgment in favor of the defendants, and plaintiffs have appealed. We affirm with a proviso.

Plaintiff Donald Moust is president of plaintiff MBD Enterprises, Inc., which does business as Love That Yogurt. Defendant American National Bank of Chicago holds legal title in a land trust to property located at the corner of 159th Street and Harlem Avenue in Tinley

Park, Illinois. The beneficiaries of the land trust are defendants P&D, Ltd. No. 101, an Illinois limited partnership, and Demetrios Dellaportas, general partner of P&D, Ltd. No. 101. A shopping center known as the Park Center Shopping Center was built on the premises. Defendant First National Realty and Development Company, Inc., manages and operates the Park Center Shopping Center.

Hereafter, plaintiffs shall be referred to jointly as the plaintiff. Defendants American National Bank, of Chicago, as the trustee under trust agreement 66662, P&D, Ltd. No. 101, an Illinois limited partnership, and Demetrios Dellaportas, general partner of P&D, Ltd. No. 101, and First National Realty Company, Inc., shall be referred to in the aggregate as American National. Defendant Frosty Putter, Inc., an Illinois corporation, shall be referred to as Frosty Putter. The Park Center Shopping Center shall be referred to as the Shopping Center.

On September 29, 1987, plaintiff entered into a 10-year lease with American National for retail space in a store located in a building known as building M in the Shopping Center. Plaintiff leased the premises for the purpose of selling yogurt and ice cream. Article VI, section 6.05, of the lease (section 6.05) provides:

> "So long as Tenant is continuously operating its business for the sale of yogurt and ice cream products, and is not otherwise in default of this lease, Owner shall not lease other space in the shopping center to a use whose principal business is the sale of yogurt or ice cream products such as Bressler's, Baskin & Robbins, T.C.B.Y. or similar operations."

On November 24, 1987, American National entered into a lease with Frosty Putter for retail space in a building known as building P in the Shopping Center. Pursuant to its lease, Frosty Putter operates a business which features indoor miniature golf and a full service restaurant that includes the sale of ice cream, yogurt, chicken, shrimp, lasagna, hamburgers, hot dogs, Italian sausage, bratwurst, marinated chicken, seafood submarine sandwiches, B-B-Q pork, salads, soups and chili.

The Frosty Putter lease contains a handwritten part known as rider 3, which provides:

> "No business whose primary business is the sale of ice cream shall be allowed in any location other than Building P and no business whose business is the sale of frozen yogurt shall be allowed in any location other than Building M as set forth on the site plan."

There is no claim that all the other leases for the Shopping Center contain a similar provision as the handwritten provision that is contained in the Frosty Putter lease.

■ Plaintiff's suit is founded upon two theories. The first theory is that section 6.05 of its lease granted it an exclusive right to sell yogurt and ice cream at the Shopping Center and that American National breached the lease by virtue of allowing Frosty Putter to operate at the Shopping Center. According to the wording of section 6.05, however, there would be no violation unless Frosty Putter's principal business is the sale of yogurt or ice cream in a manner similar to Bressler's, Baskin-Robbins, or T.C.B.Y. The record sufficiently establishes that Bressler's, Baskin-Robbins and T.C.B.Y. are businesses that sell yogurt or ice cream almost exclusively.

In reading section 6.05, the term "principal business" must be given its ordinary and commonly accepted meaning and it cannot be construed in a manner that is contrary to the plain meaning of the words used. (See *Tate v. Wabash Datatech, Inc.* (1986), 147 Ill. App. 3d 230, 236, 497 N.E.2d 1342, 1345.) "Principal" means: "Chief; leading; most important or considerable; primary." Black's Law Dictionary 1073 (5th ed. 1979).

Here, it is not disputed that Frosty Putter's total sales from yogurt and ice cream constitute only about 15% of its business. In addition, Frosty Putter is a business featuring indoor golf and a full range of restaurant meals. Unlike Bressler's, Baskin-Robbins, and T.C.B.Y., Frosty Putter does not sell yogurt or ice cream almost exclusively. It follows that Frosty Putter's principal business is not the sale of yogurt or ice cream as meant by section 6.05 of the lease.

Under the circumstances, plaintiff's first theory in its suit cannot be maintained. Thus, plaintiff's first theory fails as a matter of law because there is no genuine issue of material fact upon which the theory can be sustained.

Plaintiff's second theory is that it is a third-party beneficiary under Frosty Putter's lease with American National and that it can therefore enforce the provisions of Frosty Putter's lease. Specifically, plaintiff seeks to enforce the handwritten provision of rider 3, which provides that "no business whose business is the sale of frozen yogurt shall be allowed in any location other than Building M." Plaintiff does not concern itself with that part of the handwritten provision of rider 3 which states that "no business whose primary business is the sale of ice cream shall be allowed in any location other than Building P." Apparently, plaintiff disregards the ice cream restriction because, according to the record, plaintiff does not sell ice cream in its business in building M; plaintiff only sells yogurt.

According to plaintiff, Frosty Putter is breaching its own lease because it is selling frozen yogurt in building P, and plaintiff is a third-party beneficiary of the lease with the right to enforce the lease.

■ Plaintiff's theory misconceives third-party beneficiary contracts. A third-party beneficiary contract is a contract in which a party (the promisor) promises to render a certain performance not to the other party (the promisee), but rather to a third person (the beneficiary).

There are two types of third-party beneficiaries. There are intended beneficiaries and incidental beneficiaries. An intended beneficiary is intended by the two parties to the contract to receive a benefit for the performance of the agreement. The contract is called a third-party intended beneficiary contract.

An incidental beneficiary is not intended by the two parties to the contract to receive a benefit for the performance of the agreement. The contract is called an incidental third-party beneficiary contract.

■ Only an intended beneficiary has rights under a third-party beneficiary contract. An incidental beneficiary has no rights under a third-party beneficiary contract. (*B.C. v. J.C. Penney Co.* (1990), 205 Ill. App. 3d 5, 15, 562 N.E.2d 533, 539.) Here, at best, plaintiff is merely an incidental beneficiary under the Frosty Putter lease. It is clear, however, that plaintiff is not an intended beneficiary. Thus, plaintiff has no rights under the Frosty Putter lease. Plaintiff cannot enforce any provisions of the Frosty Putter lease as a matter of law.

It follows that plaintiff's claim to enforce Frosty Putter's lease as a third-party beneficiary cannot be maintained. Thus, plaintiff's second theory fails as a matter of law because there is no genuine issue of material fact upon which the theory can be sustained. The trial court properly entered summary judgment in favor of defendants.

■ There is an ancillary matter to this appeal which we shall address. On August 4, 1992, P&D Partners, Ltd. No. 101, filed in the appellate court a "Motion For Stay Of Appeal Pursuant To 11 U.S.C. Section 362 Of The United States Bankruptcy Code." The motion provides that the appeal should be stayed pursuant to 11 U.S.C. section 362 (1988) because: "On February 4, 1992, P&D Partners, Ltd. No. 101 filed a Voluntary Petition for relief pursuant to Chapter 11 of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division. The case is pending as 92 B 02433 under Chapter 11." The motion was allowed by the appellate court on September, 10, 1992. On its own action, on September 15, 1992, the appellate court set the case for a status report in October 1992.

On October 23, 1992, the appellate court entered the following order:

"This cause having come before the court for a status report

pursuant to this court's order entered on September 15, 1992, and the attorneys for the respective parties having appeared before the court on October 6, 1992, the court being fully advised in the premises:

The attorneys for the respective parties advised the court that no party or parties would be prejudiced if the appeal is severed as to the party or parties named in the pending bankruptcy proceedings, and the appeal is allowed to proceed in its regular course as to all other parties on appeal.

IT IS ORDERED therefore that the order of this court on September 10, 1992, removing this pending appeal from its call is vacated; and this appeal is returned to this court's call as an active appeal. It is further ordered that the appeal is severed as to the party or parties named in the bankruptcy proceedings and the appeal as to those specific parties is stayed and removed from this court's active calendar of cases without prejudice to being reinstated on the court's active calendar of cases as directed or ordered by and dependent upon what is done or to be done in the pending bankruptcy proceedings.

It is further ordered that the party or parties that are named in this present appeal and who are parties in the pending bankruptcy proceedings shall file a copy of this order with the court in the pending bankruptcy proceedings so that the court in the pending bankruptcy proceedings will be advised of the entry of this court's order."

The appellate court has not been favored with a status report of the bankruptcy proceedings by any of the parties since its order of October 23, 1992.

Accordingly, the summary judgment from which the appeal is taken is affirmed with the proviso that our decision does not apply to those parties who are protected by 11 U.S.C. section 362 or excluded by the appellate court order of October 23, 1992.

Affirmed with proviso.

TULLY and CERDA, JJ., concur.