FIRST DIVISION
June 19, 2006

No. 1-05-2516

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County, Illinois. |
| v. | ) ) | No. 04 CH 11014 |
| SHARON CONNOR HOOKS, | ) ) | Honorable Dorothy Kirie Kinnaird |
| Defendant-Appellant | ) | Judge Presiding. |
| (Donya Tyree Hooks, | ) ) | |
| Defendant). | ) | |

JUSTICE GORDON delivered the opinion of the court:

Plaintiff-appellee, State Farm Fire and Casualty Company (State Farm), filed this action seeking a declaration that it owed no duty to defend or indemnify Donya Tyree Hooks (Donya) in an underlying negligence suit file by her former sister-in-law, Sharon Conner Hooks (Sharon). The trial court granted State Farm's motion for summary judgment, finding that the policy's household exclusion applied to Sharon and that State Farm, therefore, had no duty to defend or indemnify Donya. Sharon appeals the grant of summary judgment in State Farm's favor. For the reasons that follow, we reverse and remand.

I.      BACKGROUND

In her negligence complaint against Donya, Sharon alleged that on March 4, 2001, she

was living in an apartment in a multi-unit residential building on Green Street in Chicago when a fire broke out and caused her to sustain multiple injuries. Sharon alleged that Donya, as owner of the building, was negligent in failing to provide or maintain working smoke and carbon monoxide detectors, in allowing "tenants with connections to drug activity" to go into the basement where the fire started, and in failing to provide an emergency escape light in the common hallways.

Donya tendered her defense of the suit to State Farm pursuant to a homeowner's policy she maintained with her brother and co-owner of the apartment building, Donald Hooks (Donald). Donald was married to and living with Sharon in the insured building at the time of the fire; however, he was not named as a defendant in Sharon's complaint. State Farm initially accepted the defense under a reservation of rights, but it later decided that it owed no duty to defend or indemnify Donya against Sharon's action because Sharon was an "insured" under Donya and Donald's policy. State Farm then withdrew its defense and filed the instant action against Donya and Sharon seeking a declaration that it had no duty to defend or indemnify Donya.

Donya and Donald's homeowner's policy with State Farm stated in pertinent part as follows:

> "**DEFINITIONS**
>
> 'You' and 'your' mean the 'named insured' shown in the **Declarations**. Your spouse is included if a resident of your household. 'We', 'us' and 'our' mean the Company shown in the **Declarations**.

2

\*\*\*

5. '**insured**' means you and, if residents of your household:

a. relatives

\*\*\*

6. '**insured location**' means:

a. the **residence premises**;

\*\*\*

11. '**residence premises'** means:

a. the one, two, three or four-family dwelling, other structures and grounds; or

b. that part of any other building;

where you reside and which is shown in the **Declarations**.

\*\*\*

**SECTION II - LIABILITY COVERAGES**

**COVERAGE L - PERSONAL LIABILITY**

If a claim is made or a suit is brought against an **insured** for damag

No. 1-05-2516

es becaus e of **bodily injury** or **proper ty damag e** to which this covera ge applies, caused by an **occurr ence**, we

4

will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice.  We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

***

**SECTION II - EXCLUSIONS**

1.  Coverage L and Coverage M do not apply to:

***

h. **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against you or any **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** sustained by you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

**SECTION II - CONDITIONS**

***

2. **Severability of Insurance**.  This insurance applies separately to each **insured**.  This condition shall not increase our limit of liability for any one **occurrence**." (Emphasis in original.)

In its complaint for declaratory judgment, State Farm contended that because Sharon was married to Donald, she was a relative of both Donald and Donya and was, therefore, an "insured" under the policy.  State Farm further asserted that under the policy it had no duty to defend Donya, as a named insured, against claims of bodily injury from another "insured."   Donya, thereafter, brought a counterclaim for vexatious delay and wrongful denial of coverage pursuant to section 155 of the Illinois Insurance Code.  215 ILCS 5/155 (West 2004).  Donya's counterclaims are not part of this appeal.

After both Donya and Sharon filed answers to the complaint, State Farm brought a motion for summary judgment reasserting the contentions made in its complaint and further emphasizing the fact that Sharon was living with and married to Donald, a "named insured" under the policy, at the time of her injuries.  Donya and Sharon filed separate responses to State Farm's motion for summary judgment.  They each contended that Sharon was not an "insured" as to Donya because Donya did not reside at the premises and was not a member of Sharon's household.  However, they both conceded that Sharon was, in fact, an "insured" as to Donald because Sharon and Donald were married and lived together at the insured residence.  Donya additionally contended that the policy's severability clause ("severability of insurance" as cited above) required that Sharon's status be determined independently for each "named insured" and that, therefore, Sharon's status as an "insured" as to Donald did not release State Farm from its

6

obligations to defend and indemnify Donya because Sharon did not qualify as an "insured" as to her. Finally, both Donya and Sharon contended that the policy was ambiguous and should therefore be construed against State Farm. The court granted State Farm's motion finding that Sharon was an "insured" as defined by the policy and that the severability provision had no bearing on that status. Thereafter, Sharon brought this appeal.

## II.    ANALYSIS

Sharon first contends that under the plain language of the policy, she cannot be considered an "insured" as to Donya because they were not residing together at the insured residence at the time of the fire as required by policy's definition of "insured." Sharon further argues that to the extent that the policy is unclear as to whether she qualifies as an "insured," it must be considered ambiguous and be construed against State Farm as the drafter of the policy. Sharon also contends that the policy's severability clause supports her position that her status as an "insured" must be tested separately for both Donya and Donald because it essentially creates two distinct policies for the two named insureds. Therefore, Sharon contends that her status as an "insured" in relation to Donald has no effect on her status in relation to Donya. State Farm contends that, under the unambiguous requirements of the policy, Sharon was an "insured" for purposes of the entire policy by virtue of the fact that she was married to and living with Donald at the insured residence. State Farm also maintains that the severability clause has no effect on whether someone qualifies as an insured. Accordingly, State Farm maintains that it has no duty to defend or indemnify Donya for the claims brought by Sharon.

As noted, Donya and Donald's homeowner's policy defined "insured" as "you, and if

residents of your household: (a) your relatives." The policy further excluded coverage for "[b]odily injury to you and any insured." Based on these provisions, the parties agree that State Farm would have had no duty to defend or indemnify Donald had Sharon decided to sue him for her injuries because Sharon qualified as an "insured" by virtue of her marriage to and cohabitation with Donald. Similarly, the parties also essentially agree that if Donya were the sole named insured on the policy, Sharon would not qualify as an "insured" and State Farm would be required to defend and indemnify Donya because, although the two were related in law, they were not residing together as required by the policy's definition of "insured." Thus, the primary issue in this case is whether Sharon's status as an "insured" should be determined once for the entire policy as urged by State Farm, or whether it must be determined separately for both of the named insureds, as urged by Sharon.

Summary judgment is appropriate only where the pleadings, depositions, admissions and affidavits on file, viewed in light most favorable to the nonmovant, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004). Our review of a grant of summary judgment is *de novo*. Illinois Emcasco Insurance Co. v. Northwestern National Casualty Co., 337 Ill. App. 3d 356, 359, 785 N.E.2d 905, 908 (2003).

To determine whether an insurer has a duty to defend, the court must look to the allegations of the underlying complaint and compare those to the relevant provisions of the insurance policy. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 107-08, 607 N.E.2d 1204, 1212 (1992); United States Fidelity & Guaranty Co. v.

Wilkin Insulation Co., 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930 (1991). The underlying complaint and the insurance policy must be liberally construed in favor of the insured. Wilkin, 144 Ill. 2d at 74, 578 N.E.2d at 930. If the underlying complaint alleges facts within, or potentially within, the policy's coverage, the insurer is obligated to defend its insured. Wilkin, 144 Ill. 2d at 73, 578 N.E.2d at 930.

Moreover, an insurance policy is a contract and construction of its provisions is a question of law. Outboard Marine Corp., 154 Ill. 2d at 108, 607 N.E.2d at 1212.

> "In construing an insurance policy, the court must ascertain the intent of the parties to the contract. [Citations.] To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole [citations] with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract [citation]. If the words in the policy are unambiguous, a court must afford them their *plain, ordinary, and popular meaning.* [Citations.] However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous [citation] and will be construed in favor of the insured and against the insurer who drafted the policy [citations]." (Emphasis in original.) Outboard Marine Corp., 154 Ill. 2d at 108-09, 607 N.E.2d at 1212.

State Farm contends that Sharon qualified as an "insured" for the entire policy because she was living with and related to Donald, a named insured. State Farm further contends that Sharon's status was not affected by the fact that neither she nor Donald was living with Donya,

9

the other named insured, at the time of the fire. In this regard, State Farm avers that the severability clause has no effect on whether someone qualifies as an insured. In support, State Farm relies upon the decision of this court in State Farm Fire & Casualty Co. v. Guccione, 171 Ill. App. 3d 404, 525 N.E.2d 595 (1988). We disagree that Guccione supports State Farm's position in this case.

In Guccione, husband and wife, Anthony and Tessie Guccione, were named insureds on a homeowner's insurance policy issued by State Farm. Guccione, 171 Ill. App. 3d at 405, 525 N.E.2d at 595. The Gucciones' policy contained nearly identical provisions to those involved in the instant case: it defined "insured" as " 'you and the following residents of your household: a. your relatives.' " Guccione, 171 Ill. App. 3d at 406, 525 N.E.2d at 596. The policy further defined "you" as "the named insured shown in the declarations and the spouse if he or she is a resident of the same household." Guccione, 171 Ill. App. 3d at 406, 525 N.E.2d at 596. The policy also excluded coverage for " 'bodily injury to you or any insured within the meaning of *** the definitions of insured.' " Guccione, 171 Ill. App. 3d at 406, 525 N.E.2d at 596.

After being injured by an accidental shooting at the insured residence, Tessie's son from a previous marriage, Gus Kazas, brought a personal injury claim against Anthony. Guccione, 171 Ill. App. 3d at 405, 525 N.E.2d at 595. Anthony tendered his defense to State Farm pursuant to the homeowner's insurance policy, and State Farm subsequently filed a complaint for declaratory judgment arguing that it had no duty to defend or indemnify Anthony because Gus was an "insured" under the policy and his claim was, therefore, excluded. Guccione, 171 Ill. App. 3d at 405, 525 N.E.2d at 595. The court found that the exclusionary provision of the policy

unambiguously denied coverage to Anthony for Gus's claim because Gus was a resident of Anthony's household and was a relative. Guccione, 171 Ill. App. 3d at 406, 525 N.E.2d at 596.

The court also addressed Anthony's argument that the policy's severability clause provided separate coverage to Anthony, Tessie, and Gus. Guccione, 171 Ill. App. 3d at 406-07, 525 N.E.2d at 596-97. The severability clause in Guccione was identical to the one involved in the instant case: " 'This insurance applies separately to each insured. This condition shall not increase our limit of liability for any one occurrence.' " Guccione, 171 Ill. App. 3d at 406, 525 N.E.2d at 596. The court noted that the Illinois Supreme Court in United States Fidelity & Guaranty Co. v. Globe Indemnity Co., held that an insurance policy's severability clause essentially created separate policies for each insured. Guccione, 171 Ill. App. 3d at 407, 525 N.E.2d at 596-97; see United States Fidelity & Guaranty Co. v. Globe Indemnity Co., 60 Ill. 2d 295, 299, 327 N.E.2d 321, 323 (1975). The court then found that even if it viewed Anthony as a separately insured party, the exclusionary clause would still apply because Gus clearly fell within the definition of "insured." Guccione, 171 Ill. App. 3d at 407, 525 N.E.2d at 597.

Despite its contentions to the contrary, Guccione does not support State Farm's position. Although the facts in that case are similar in many respects to those before us now, and although the relevant policy provisions are nearly identical, there is one crucially dispositive distinction between the facts of the instant case and those in Guccione. Under both policies, in order for someone to qualify as an "insured," that person must be both a relative of the named insured and reside in the same domicile as the named insured. In Guccione, the underlying plaintiff, Gus, met both requirements in that he was related to and living with both of the named insureds,

11

Anthony and Tessie. Guccione, 171 Ill. App. 3d at 407, 525 N.E.2d at 597. Although Gus's relationship to Anthony would appear to be that of stepson, the declaratory plaintiff in that case did not contend that he was not Anthony's relative because of a lack of consanguinity. See Guccione, 171 Ill. App. 3d at 407, 525 N.E.2d at 597. In contrast, here, the underlying plaintiff, Sharon, did not reside with Donya, the named insured against whom Sharon's claim was directed.

State Farm, nevertheless, argues that the court in Guccione rejected the notion that a severability clause can intersect with a policy's definition of "insured" and thereby affect the applicability of a policy exclusion. We do not find any such rejection in Guccione. Rather, the court in Guccione acknowledged the operative validity of the reasoning of our supreme court in United States Fidelity & Guaranty Co., which, as discussed below, is relied upon by the appellant in this case. See Guccione, 171 Ill. App. 3d at 407, 525 N.E.2d at 596-97. In United States Fidelity & Guaranty Co., the court held that a similar severability clause, albeit in the context of an automobile insurance policy, acted to essentially create separate policies for each insured. United States Fidelity & Guaranty Co., 60 Ill. 2d at 299, 327 N.E.2d at 323. After citing to United States Fidelity & Guaranty Co., the Guccione court held that even when it viewed Anthony as a separately insured party, Gus still qualified as an "insured" under the policy's definition such that the insurer would not be required to provide coverage for Anthony. Guccione, 171 Ill. App. 3d at 407, 525 N.E.2d at 597.

As previously noted, Sharon, the appellant in this case, relies on United States Fidelity & Guaranty Co. to support her position that under the severability clause her status as an "insured"

must be determined with regard to Donya independently from her status with regard to Donald. In United States Fidelity & Guaranty Co., Sealy Mattress Company (Sealy) entered into an agreement with Hawthorn Leasing Company (Hawthorn) to lease trucks. United States Fidelity & Guaranty Co., 60 Ill. 2d at 296, 327 N.E.2d at 322. Under the agreement, Hawthorn furnished Sealy with insurance for bodily injury by having Sealy named as an additional insured under Hawthorn's comprehensive automobile liability policy with Globe. United States Fidelity & Guaranty Co., 60 Ill. 2d at 296, 327 N.E.2d at 322. Sealy also carried its own comprehensive automobile liability policy with United States Fidelity & Guaranty Company (USFG) to provide coverage for both owned and "non-owned" vehicles with the condition that it would be excess insurance if there was any other valid and collectible insurance. United States Fidelity & Guaranty Co., 60 Ill. 2d at 296, 327 N.E.2d at 322.

Turner, an employee of Hawthorn, brought suit against Sealy for personal injuries he sustained when a Sealy employee moved a truck Turner was servicing. United States Fidelity & Guaranty Co., 60 Ill. 2d at 296, 327 N.E.2d at 322. Sealy's insurer, USFG, thereafter filed an action for a declaratory judgment directed against Globe to determine the liabilities under the two companies' respective policies. United States Fidelity & Guaranty Co., 60 Ill. 2d at 295-96, 327 N.E.2d at 321.

Hawthorn's policy with Globe (under which Sealy was named as an additional insured) excluded coverage " '(b) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation,' " and " '(c) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured.' " United States

Fidelity & Guaranty Co., 60 Ill. 2d at 297, 327 N.E.2d at 322. The policy also contained the following severability clause: " 'The insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability.' " United States Fidelity & Guaranty Co., 60 Ill. 2d at 297, 327 N.E.2d at 322.

The supreme court affirmed the appellate court's judgment in favor of USFG and against Globe, stating:

"[T]he severability clause provides each insured with separate coverage, as if each were separately insured with a distinct policy, subject to the liability limits of the policy. The employee exclusion, therefore, does not exclude protection for an additional insured against an injury suffered by an employee of another insured. The exclusionary clause applies only to the situation where an insured is sued by its own employee." United States Fidelity & Guaranty Co., 60 Ill. 2d at 299, 327 N.E.2d at 323.

State Farm contends that the supreme court's treatment of the severability clause in United States Fidelity & Guaranty Co. is inapplicable here because, as noted above, that case involved an automobile liability policy and not a homeowner's policy like in the instant case. We note an additional related difference in the fact that United States Fidelity & Guaranty Co. involved an employee exclusion rather than an exclusion of "insureds" on the bases of family relationship and cohabitation. See United States Fidelity & Guaranty Co., 60 Ill. 2d at 297, 327 N.E.2d at 322. While these are distinguishing factors, these distinctions do not alter the plain meaning of the severability clause and its apparent impact on the exclusion in this case.

14

No. 1-05-2516

Although United States Fidelity & Guaranty Co. involved a different type of policy and a different exclusion, the severability clause in that case is analogous to the severability clause before us now insofar as they both state that the insurance "applies separately to each insured." The court in United States Fidelity & Guaranty Co. applied this same severability language to permit recovery by an employee of one of the insureds against a co-insured so long as that co-insured was not an employer. See United States Fidelity & Guaranty Co., 60 Ill. 2d at 299, 327 N.E.2d at 323. In explaining the basis for finding such an interrelation between the severability clause and the exclusionary provision under its subject policy, the court in United States Fidelity & Guaranty Co. stated:

> "A reasonable interpretation of the language of the severability clause,
> that 'the insurance afforded applies separately to each insured,' leads to the
> obvious conclusion that each insured is to be treated as if each were separately
> insured. The language shows that the insurer recognizes an obligation to
> additional insureds distinct from its obligation to the named insured." United
> States Fidelity & Guaranty Co., 60 Ill. 2d at 299, 327 N.E.2d at 323.

In point of fact, Guccione, upon which State Farm relies, overtly acknowledged the applicability of the foregoing analysis in United States Fidelity & Guaranty Co. to its homeowner's policy. See Guccione, 171 Ill. App. 3d at 406, 525 N.E.2d at 596-97. As noted previously, Guccione did not reject this analysis as being applicable to a homeowner's policy, but simply held that under its facts, the severability clause would not have any impact because the claimant resided with and was related to each of the insureds and, consequently, even if the insurance policy were

15

considered to be separate with respect to each insured, the claimant's suit would, nevertheless, remain excluded. Guccione, 171 Ill. App. 3d at 406, 525 N.E.2d at 597.

Although not articulated by State Farm, we recognize that the court in United States Fidelity & Guaranty Co. noted that the underlying function of the exclusionary provision in its subject policy was

"to preclude an employee from suing his employer for injuries suffered as a result of the employer's negligence. The purpose behind this exclusion is that the employee is covered by workmen's compensation and can recover with or without a showing of negligence. This purpose, however, fails when an employee sustains injuries through the negligence of one other than his employer though covered by the same policy, as in the case at bar. If liability for this latter type occurrence was to be excluded from the policy, it could have been clearly stated."

 United States Fidelity & Guaranty Co., 60 Ill. 2d at 299, 327 N.E.2d at 323.

While the reason for the exclusion of family member co-residents in this case is not the same as that articulated in United States Fidelity & Guaranty Co., the language in the respective severability clauses is nearly identical. And, as pointed out above, the court in United States Fidelity & Guaranty Co. did not hesitate to interpret the term "applies separately to each insured" to modify the exclusion in that case so as to render the insurer liable for claims brought by an employee of one insured against the non-employer co-insured. See United States Fidelity & Guaranty Co., 60 Ill. 2d at 299, 327 N.E.2d at 323. So, too, the clear import of the term "applies separately to each insured" contained in the severability clause of the instant policy must be

16

construed to modify the exclusion so as to render the insurer liable for claims brought by a related household member of one named insured against another named insured residing in a separate household. In that regard, we note that State Farm does not provide us any alternatively plausible purpose or application of the severability clause in this policy.

We also note, for that matter, that the business purpose behind family exclusion provisions in homeowner's policies has been discussed in several decisions. For instance, in Prudential Property & Casualty Insurance Co. v. Scott, 161 Ill. App. 3d 372, 514 N.E.2d 595 (1987), the court noted the purpose for a "family exclusion" may be to avoid the possibility of collusion between resident household members. Scott, 161 Ill. App. 3d at 379, 514 N.E.2d at 599. The Scott court also cited a Minnesota Supreme Court case in which it was suggested that an additional purpose for the exclusion could simply be to keep premiums down by excluding those individuals most likely to be injured, namely, resident family members. Scott, 161 Ill. App. 3d at 379, 514 N.E.2d at 599, citing Minners v. State Farm Mutual Automobile Insurance Co., 284 Minn. 343, 350 (1969); see also A.G. v. Travelers Insurance Co., 112 Wis. 2d 18, 20-21, 33 N.W.2d 643, 644-45 (App. 1983); Shannon v. Shannon, 150 Wis. 2d 434, 456, 442 N.W.2d 25, 35 (1989). Interestingly, each of the foregoing underlying business reasons would emphasize the need for a combined familial and residence-sharing relationship in order to come within the underlying business purpose. Thus, the application of the severability clause to narrow the scope of the exclusion to permit coverage for a claim against an insured residing in a separate domicile is by no means inconsistent with the foregoing articulated business purposes. See United States Fidelity & Guaranty Co., 60 Ill. 2d at 299, 327 N.E.2d at 323.

However, in any case, the insurance policy here in question does not purport to recite any underlying business purpose or intent regarding its exclusion. Manifestly, the impact of the severability clause upon the scope of the exclusion must be determined from the language of the policy itself. See Willison v. Economy Fire & Casualty Co., 294 Ill. App. 3d 793, 797-98, 690 N.E.2d 1073, 1075 (1998) ("[a]n insurance policy is a contract and must be interpreted in accordance with rules of contract construction. [Citation.] The function of a court in construing an insurance policy is to ascertain and give effect to the intention of the parties *as expressed in the policy*" (emphasis added)). Thus, the clear language of the severability clause under these circumstances would, as in United States Fidelity & Guaranty Co., modify the exclusion so as to permit coverage for a co-insured whose household is not being shared by the claimant. Such a meaning is supported by a plain reading of the clause, which, as noted, states: "This insurance applies separately to each insured." As we have noted above, State Farm does not purport to provide any alternate plausible purpose or function for that severability clause and we cannot, thereby, conjecture that the severability clause had some purpose behind it other than to treat each insured as if he or she had his or her own policy, subject only to the liability limits of the policy. Moreover, even if the applicability of the severability clause were ambiguous, any such ambiguity would have to be construed in favor of the insured and against the insurer as the drafter of the contract. See Outboard Marine Corp., 154 Ill. 2d at 108-09, 607 N.E.2d at 1212. Accordingly, we reverse the judgment of the circuit court and remand for proceedings consistent with this opinion.

Reversed and remanded.

18

CAHILL, P.J., and BURKE, J., concur.