ANGELIA HACKER, Plaintiff-Appellee, v. SHELTER INSURANCE COMPANY, Defendant-Appellant.

Fifth District    No. 5—07—0387

Opinion filed February 10, 2009.

DONOVAN, J., dissenting.

Shane M. Carnine, of Campbell, Black, Carnine, Hedin, Ballard & McDonald, of Mt. Vernon, for appellant.

Mark D. Prince, of Prince Law Firm, of Carbondale, for appellee.

JUSTICE STEWART delivered the opinion of the court:

The defendant, Shelter Insurance Company (Shelter Insurance), appeals from a summary judgment entered by the circuit court in favor of the plaintiff, Angelia Hacker. This appeal presents the issue of whether a landlord's liability insurance company has a duty to defend a tenant in a suit brought by a third party seeking damages for injuries allegedly caused by the tenant's negligence. We hold that, under the facts of this case, it does not. We reverse the circuit court's summary judgment in favor of Hacker, and we remand to the circuit court with directions to enter a summary judgment in favor of Shelter Insurance.

## BACKGROUND

In June of 2001, Hacker rented an apartment in Carbondale, Illinois, from Truman Burk to live in while she attended Southern Illinois University. During the period of time in which Hacker rented the apartment, Shelter Insurance furnished Burk with an "Apartment Owners/Rental Dwelling Insurance Policy." The policy provided the following coverage:

"We will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

1. Bodily injury or Property Damage covered by this policy, caused by an occurrence and arising out of the ownership, maintenance[,] or use of the insured premises and all necessary or incidental operations.
\*\*\*

We shall have the right and duty to defend any suit against the insured even if any of the allegations of the suit are groundless, false[,] or fraudulent."

The policy defined the term "insured" as "the person(s) or organization named in the Declarations of the policy, \*\*\* the insured's spouse, \*\*\* any person \*\*\* acting as real estate manager for the insured," and "any employee of the insured while acting within the scope of their duties." Burk was the only person named as an insured in the declarations of the policy.

On May 10, 2002, Hacker's parents, Cathy and David Hacker, visited Hacker at her apartment. During the visit, Cathy fell on a

stairway at the apartment building and suffered bodily injuries. The accident occurred during the period in which the Shelter Insurance policy was in effect. On March 23, 2004, Cathy and David filed a complaint against Burk, alleging that Burk's negligence in maintaining the stairway was the proximate cause of Cathy's injuries. On September 2, 2004, Burk filed a third-party complaint against Hacker and sought indemnification or contribution from Hacker based on her negligence that caused or contributed to Cathy's accident. Hacker maintained that she was a coinsured under Burk's apartment owner's insurance policy, and on February 15, 2005, she tendered her defense of Burk's third-party complaint to Shelter Insurance.

Shelter Insurance declined to defend Hacker, and Hacker filed a complaint for a declaratory judgment, which is the subject matter of this appeal. The complaint for a declaratory judgment maintained that Hacker was an additional insured under Burk's liability insurance and that Burk's third-party complaint alleged claims covered under the terms of the insurance policy. Shelter Insurance denied that Hacker was an insured under the liability insurance policy since she was not a named insured on the declarations page and did not otherwise qualify as an insured as that term is defined in the policy.

Each party moved for a summary judgment, and on June 28, 2007, the circuit court entered a summary judgment in favor of Hacker. The circuit court held that Hacker was an additional insured under the policy and that Shelter Insurance was obligated to defend Hacker in Burk's third-party proceeding against her.

## DISCUSSION

Shelter Insurance appeals the circuit court's summary judgment. Appellate review of a summary judgment is *de novo. Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 146, 787 N.E.2d 786, 789 (2003). A summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2006). The interpretation of an insurance policy and the coverage provided are questions of law that are appropriate for resolution through summary judgment. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073, 1077 (1993).

In the present case, the summary judgment motions presented the issue of whether Shelter Insurance has a duty to defend Hacker from the allegations contained in Burk's third-party complaint. "To determine whether an insurer has a duty to defend, the court must

look to the allegations of the underlying complaint and compare those to the relevant provisions of the insurance policy." *State Farm Fire & Casualty Co. v. Hooks*, 366 Ill. App. 3d 819, 823, 853 N.E.2d 1, 4 (2006). This analysis requires us to construe the language contained in the insurance policy. "A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy," and the policy's words are given their plain and ordinary meaning. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 362, 363, 860 N.E.2d 307, 314 (2006). "An insurance policy is a contract and is subject to the general rules governing contract interpretation." *Progressive Premier Insurance Co. v. Cannon*, 382 Ill. App. 3d 526, 528, 889 N.E.2d 790, 793 (2008).

The underlying third-party complaint filed by Burk alleges that Cathy Hacker fell at Hacker's apartment and sustained bodily injuries as a result of Hacker's negligence. The insurance policy covers claims for "bodily injury" that occurs at the "insured premises" and "aris[es] out of the ownership, maintenance[,] or use of the insured premises." However, the policy protects only the "insured" from liability for bodily injuries occurring at the insured premises, and Shelter Insurance agreed to defend only the "insured" in suits involving such injuries. The policy defines the term "insured" as the person named on the policy's declarations page, and the policy also covers the insured's spouse, any person acting as a real estate manager for the insured, and an employee of the insured acting within the scope of his duties.

Burk is the only person named as an insured on the policy declarations page, and Hacker does not otherwise fit within the policy's definition of "insured." The policy does not include Burk's tenants within the definition of "insured." Accordingly, there is no ambiguity with respect to Hacker's coverage under the policy; she is not an insured under the plain and ordinary meaning of the terms of the policy. "If the policy language is unambiguous, the policy will be applied as written, unless it contravenes public policy." *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17, 823 N.E.2d 561, 564 (2005).

Hacker cites *Dix Mutual Insurance Co. v. LaFramboise*, 149 Ill. 2d 314, 597 N.E.2d 622 (1992), and argues that, as a tenant, she is a coinsured under her landlord's insurance policy as a matter of law even though she is not expressly included as an insured under the terms of the policy. We disagree. *Dix* is distinguishable and is not applicable in the present case.

In *Dix*, a tenant caused a fire loss to a leased residential property. *Dix*, 149 Ill. 2d at 317, 597 N.E.2d at 623. The landlord's insurance

company paid the landlord for the loss pursuant to a fire insurance policy covering the leased premises. *Dix*, 149 Ill. 2d at 317, 597 N.E.2d at 623. The landlord's insurance company brought a subrogation action against the tenant, alleging that the tenant negligently caused the fire damage and seeking the amount it had paid to the landlord for the fire loss. *Dix*, 149 Ill. 2d at 318, 597 N.E.2d at 624. On appeal, the Illinois Supreme Court addressed the issue of whether the insurance company had a right of subrogation against the tenant. *Dix*, 149 Ill. 2d at 318, 597 N.E.2d at 624.

The supreme court's analysis of this issue focused on the equitable nature of subrogation, and the court considered the language of the lease in light of these equitable principles. The court stated that in order to assert a subrogation right, the insurance company must "step into the shoes of" its insured and may assert a subrogation right only if "(1) the landlord could maintain a cause against the tenant and (2) it would be equitable to allow the insurance company to enforce a right of subrogation against the tenant." *Dix*, 149 Ill. 2d at 319, 597 N.E.2d at 625. The *Dix* court held that, under the facts of that case, the insurance company's attempt to assert a subrogation right against the tenant failed under this analysis.

In determining whether the landlord could maintain a cause of action against the tenant, the court looked to the terms of the lease to determine the intent of the parties concerning who would be responsible for any fire loss to the leased premises. *Dix*, 149 Ill. 2d at 319-20, 597 N.E.2d at 625. The court noted that tenants are generally liable for fire damage to the leased premises caused by their own negligence, and the court noted that the lease in *Dix* did not contain a provision expressly relieving the tenant of this liability. *Dix*, 149 Ill. 2d at 319-20, 597 N.E.2d at 625. However, the court looked to the terms of the lease "as a whole" and concluded that the parties, neither of whom was sophisticated in real estate transactions, did not intend for the tenant to be responsible for any fire damage to the leased premises. *Dix*, 149 Ill. 2d at 320-21, 597 N.E.2d at 625.

The only paragraph in the lease that addressed the issue of a loss in the event of a fire provided as follows:

" '(E) The Tenant will assume their [*sic*] own risk for their [*sic*] personal property and Landlord, J.S. Ludwig, will not be responsible for fire, wind[,] or water damage.' " *Dix*, 149 Ill. 2d at 321, 597 N.E.2d at 625-26.

The *Dix* court stated that the language of this provision evidenced that the parties intended for the tenant to be responsible for his personal property and that the landlord was exempt from liability for damage to the tenant's personal property in the event of a fire. *Dix*,

149 Ill. 2d at 321-22, 597 N.E.2d at 626. The court found it significant that the parties considered the possibility of a fire but failed to expressly provide for the leased premises in the event of a fire. *Dix*, 149 Ill. 2d at 322, 597 N.E.2d at 626. The court, therefore, concluded "that the parties intended for each to be responsible for his own property," and the court felt that the landlord obtaining a fire insurance policy on the premises further supported this conclusion. *Dix*, 149 Ill. 2d at 322, 597 N.E.2d at 626.

In addition to the terms of the lease, the court also noted that the cost of fire insurance on the leased premises is usually factored into the rent and that " ' "[i]n practical effect the tenant paid the cost of the fire insurance." ' " *Dix*, 149 Ill. 2d at 322-23, 597 N.E.2d at 626, quoting *Cerny-Pickas & Co. v. C.R. Jahn Co.*, 7 Ill. 2d 393, 398, 131 N.E.2d 100, 104 (1955), quoting *General Mills, Inc. v. Goldman*, 184 F.2d 359, 366 (8th Cir. 1950). The court cited the well-settled principle that an insurer may not subrogate against a coinsured, and the court held, "Under the particular facts of this case, the tenant, by payment of rent, has contributed to the payment of the insurance premium, thereby gaining the status of co[ ]insured under the insurance policy." *Dix*, 149 Ill. 2d at 323, 597 N.E.2d at 626.

The court concluded, "Both the landlord and tenant intended that the policy would cover any fire damage to the premises no matter who caused it ***." *Dix*, 149 Ill. 2d at 323, 597 N.E.2d at 626. The court denied the insurance company the right to subrogation against the tenant based on "the provisions of the lease as a whole, the reasonable expectations of the parties, and the principles of equity and good conscience." *Dix*, 149 Ill. 2d at 323, 597 N.E.2d at 626.

The *Dix* decision is distinguishable from the facts of the present case in two important aspects. First, the analysis in *Dix* involved the equities of applying the equitable doctrine of subrogation. The issue in the present case, however, does not involve the application of an equitable doctrine. The issue in the present case is whether an insurer has the duty to defend a person under the terms of a liability insurance policy. The determination of whether a person qualifies as an insured for purposes of the insurance company's duty to defend under a policy is a matter of contract construction and involves comparing the insurance contract with the allegations of the underlying complaint. The *Dix* court's analysis of the equities of subrogation is not relevant in determining an insurance company's duty to defend.

Second, the type of insurance at issue is also an important distinction between the present case and *Dix*. The *Dix* court held, "[T]he tenant, by payment of rent, has contributed to the payment of the insurance premium, thereby gaining the status of co[ ]insured under

the insurance policy." *Dix*, 149 Ill. 2d at 323, 597 N.E.2d at 626. The *Dix* court's analysis, however, involved fire insurance, which covered fire losses sustained by the landlord to the leased premises. *Dix*, 149 Ill. 2d at 322-23, 597 N.E.2d at 626. The issue in the present case does not involve fire insurance. It involves liability insurance that does not cover losses to the leased premises but instead is "[a]n agreement to cover a loss resulting from the insured's liability to a third party ***. The insured's claim under the policy arises once the insured's liability to a third party has been asserted.—Also termed *third-party insurance; public-liability insurance*." Black's Law Dictionary 817 (8th ed. 2004). The *Dix* court's analysis, which focused on the nature of fire insurance in landlord/tenant transactions, does not apply to liability insurance.

In analyzing fire insurance in the context of landlord/tenant relationships, the *Dix* court quoted *Cerny-Pickas & Co. Dix*, 149 Ill. 2d at 322-23, 597 N.E.2d at 626 (relying on *Cerny-Pickas & Co. v. C.R. Jahn Co.*, 7 Ill. 2d 393, 398, 131 N.E.2d 100, 104 (1955)). Like *Dix*, *Cerny-Pickas & Co.* held that the language contained in a lease agreement did not allow a fire insurance company to maintain a subrogation action against the tenant. In its analysis, the *Cerny-Pickas & Co.* court noted that if the tenant did not receive the benefit of the landlord's fire insurance, then both parties would have to insure the premises against fire. *Cerny-Pickas & Co.*, 7 Ill. 2d at 398, 131 N.E.2d at 103. In addition, the court cited cases from other jurisdictions where courts held that landlords and tenants intended for rent proceeds to be the source of payment for fire insurance on the leased premises. " '[C]onsciously or unconsciously, the cost of insurance to the landlord, or the value of the risk[,] enters into the amount of rent,' " and a landlord figures " 'on the rentals to be paid by the tenant as the source of the fire insurance premiums.' " *Cerny-Pickas & Co.*, 7 Ill. 2d at 398, 131 N.E.2d at 104 (quoting *Lothrop v. Thayer*, 138 Mass. 466, 475 (1885), and *General Mills, Inc. v. Goldman*, 184 F.2d 359, 366 (8th Cir. 1950)).

This analysis does not apply in the present case. Fire insurance covers losses to the leased property, and it is "common business practice" for landlords to insure leased premises against fire. *Stein v. Yarnall-Todd Chevrolet, Inc.*, 41 Ill. 2d 32, 36, 241 N.E.2d 439, 442 (1968). Liability insurance, however, covers losses resulting from an individual's liability to third parties. It is not common business practice for landlords to insure their tenants against liability to third parties arising out of the tenant's negligence. A tenant, therefore, cannot reasonably expect to be considered an insured under a landlord's liability insurance, particularly when there is no evidence of that

intent in the parties' lease agreement or in the language of the insurance policy. While Burk and Hacker might have intended that Hacker would not be liable for any fire damage to the leased premises (see *Dix*, 149 Ill. 2d at 322, 597 N.E.2d at 626), there is no language in the lease to indicate that Hacker would not be liable to third parties for losses she causes through her own negligence. No reported cases in Illinois have expanded the *Dix* decision to apply to a landlord's liability insurance policy absent an express agreement between the parties that the landlord would insure the tenant against liability to third parties.

It is common business practice for tenants to obtain their own renter's insurance policy to cover their liability for losses they cause to third parties. To hold that a tenant is an additional insured under her landlord's liability insurance as a matter of law would require owners of large multiunit leased structures to secure adequate liability insurance not only for themselves but for perhaps hundreds or thousands of tenants, depending on the size of the building. The premium for that liability insurance coverage would likely be cost-prohibitive considering the magnitude of the potential risk covered by the policy. *Dix* is limited to "the particular facts of [that] case" (*Dix*, 149 Ill. 2d at 323, 597 N.E.2d at 626), and we decline to expand *Dix* to hold that a tenant gains the status of a coinsured under the landlord's liability policy by the payment of rent. In *ESL Delivery Services Co. v. Delivery Network, Inc.*, 384 Ill. App. 3d 451, 893 N.E.2d 289 (2008), we held that a tenant was not a coinsured under a landlord's liability insurance policy, and we find no reason to overturn our analysis in that case.

With respect to fire insurance, many other jurisdictions have analyzed facts similar to those in *Dix* to determine whether a landlord's fire insurance company can sustain a subrogation action against a tenant for fire losses to the leased premises caused by the tenant's negligence. There are three general approaches to the issue. *Dattel Family Ltd. Partnership v. Wintz*, 250 S.W.3d 883, 887 (Tenn. App. 2007). Some courts hold that absent a clearly expressed agreement to the contrary, the tenant is presumed to be a coinsured on the landlord's insurance policy for purposes of subrogation. *Sutton v. Jondahl*, 532 P.2d 478, 482 (Okla. App. 1975). Other courts hold that absent a clearly expressed agreement to the contrary, the landlord's fire insurance carrier will be allowed to sue a tenant in subrogation. *Dattel Family Ltd. Partnership*, 250 S.W.3d at 887-88. Finally, other courts, such as the *Dix* court, hold that the applicability of the doctrine of subrogation should be addressed on a case-by-case basis based on the intent and reasonable expectations of the parties in each case. *Dattel Family Ltd. Partnership*, 250 S.W.3d at 887-88.

Our research has not revealed any cases under any approach that have held that a tenant is a coinsured under a landlord's liability insurance policy where the terms of the insurance policy do not include the tenant as an insured. *E.g.*, *Bewig v. State Farm Fire & Casualty Insurance Co.*, 848 S.W.2d 521, 521-22 (Mo. App. 1993) (the tenant was not an insured under the landlord's "Rental Dwelling Insurance" policy); *Hulstzman v. State Farm Fire & Casualty Co.*, 188 Ga. App. 12, 372 S.E.2d 9 (1988). There is neither a rule of law nor a principle of equity that requires the landlord's liability insurance company to defend a tenant against third-party liability claims when the terms of the policy do not require the insurance company to do so.

Hacker argues, alternatively, that she was a third-party beneficiary of Burk's insurance policy with Shelter Insurance. We disagree. Illinois recognizes two types of third-party beneficiaries, intended and incidental. *MBD Enterprises, Inc. v. American National Bank of Chicago*, 275 Ill. App. 3d 164, 168, 655 N.E.2d 1061, 1064 (1995). An intended beneficiary is intended by the parties to the contract to receive a benefit for the performance of the agreement and has rights and may sue under the contract; an incidental beneficiary has no rights and may not sue to enforce them. *MBD Enterprises, Inc.*, 275 Ill. App. 3d at 168, 655 N.E.2d at 1064. "Liability to a third party must affirmatively appear from the contract's language and from the circumstances surrounding the parties at the time of its execution ***." *Ball Corp. v. Bohlin Building Corp.*, 187 Ill. App. 3d 175, 177, 543 N.E.2d 106, 107 (1989).

In the present case, there is no evidence in the record that Burk and Shelter Insurance intended Hacker to directly benefit from the liability insurance policy.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court and remand to the circuit court with directions to enter a summary judgment in favor of Shelter Insurance.

Reversed; cause remanded with directions.

WEXSTTEN, P.J., concurs.

JUSTICE DONOVAN, dissenting:

In this case, Angelia Hacker, a college student, rented an apartment in a four-unit building that was owned and maintained by the lessors, Truman Burk and Mirasol Burk. Angelia resided in the top, rear apartment. The only way to reach the apartment entrance was to

climb an exterior set of wooden stairs that served only that apartment. Angelia's mother and guest, Cathy Hacker, was descending the exterior stairway at night when she apparently missed the last step in the darkness, fell, and was injured.

Cathy Hacker brought a negligence action against the Burks and alleged that the conditions of the stairway and the lighting were unsafe and were not in compliance with building and municipal codes and that the Burks negligently maintained these unsafe conditions and failed to keep the premises in good repair. The Burks filed a third-party complaint seeking indemnification or contribution from their tenant, Angelia Hacker, and they attached and referred to provisions in the written lease in support of the allegations in the third-party complaint. The Burks alleged that Angelia had breached her duties under the lease to keep the premises in good repair and to report any malfunction of any part of the premises and that Angelia failed to warn her guest about the alleged unsafe conditions of the stairway and the lighting, even though her knowledge of the alleged unsafe conditions was comparable to that of the Burks. The Burks also alleged that Angelia had agreed to exculpate the lessors from liability for injuries to herself and to her guests and to indemnify the lessors and hold them harmless from any claims for injury. Subsequently, Angelia filed an action against Shelter Insurance Company (Shelter), seeking a judgment declaring that she is an insured under the "Apartment Owners/Rental Dwelling Insurance Policy" (Shelter policy) issued by Shelter to the Burks and that Shelter had a duty to defend her in the third-party claim filed against her.

To determine whether an insurer has a duty to defend an insured, the court considers the factual allegations of the underlying complaints in light of the relevant provisions of the insurance policy. *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017, 1022, 886 N.E.2d 1166, 1171 (2008), *appeal allowed*, 229 Ill. 2d 617, 897 N.E.2d 249 (2008). Although seemingly ignored in the majority's decision, an analysis of Shelter's duty to defend in this case necessarily includes a consideration of the facts alleged the Burks' third-party complaint and the lease attached thereto and incorporated therein. See *American Economy Insurance Co.*, 382 Ill. App. 3d at 1031-32, 886 N.E.2d at 1178-79.

In this case, the lease was prepared by the Burks. It contains three sections. The first section provides in pertinent part that the tenant will not alter or reconstruct the premises or furnishings; that the tenant will not contract for the construction, repair, or improvements on, in, or to the premises or any part thereof without the written consent of the lessor; that the lessor and his employees will not be

liable for any loss, injury, or damages to the tenant or guests; that the tenant assumes all risk of loss or damage to his property that may be caused by water leakage, fire, windstorm, or any other cause; and that the tenant agrees to and does indemnify and hold harmless the lessor and its employees from and against any and all claims for injury, loss, or damages to person and/or property regardless of cause. The first section also reserves to the lessor the right to access the premises at any reasonable hour for purposes of inspection and for making repairs or alterations the lessor deems appropriate. The second section contains several rules and regulations, including a rule directing that the tenant immediately report any malfunction of any part of the premises to the lessor. The third section contains additional provisions, including the following: "Tenant is advised that the property is insured, but since the insurance does not cover tenant's property, they shall consider having renter's insurance."

The lease, as drafted, contains conflicting provisions regarding who should bear the risk of loss arising from an unsafe or poorly maintained condition of the premises and its structures. In one section the lessors have attempted to exculpate themselves from liability for damages to the persons and the property of the tenant and her guests resulting from the lessors' negligence, and in another section, the lessors have notified the tenant that they have procured insurance, and they have warned that the insurance will not cover the tenant's personal property. These conflicting provisions render the terms of the lease ambiguous and uncertain. A lease is an agreement subject to the law of contracts, and ambiguities in the residential lease are strictly construed against the lessor and in favor of the tenant. *Towne Realty, Inc. v. Shaffer*, 331 Ill. App. 3d 531, 536, 773 N.E.2d 47, 51-52 (2002). A contractual provision that relieves a party from responsibility for his own negligence must be express and unequivocal. *Cerny-Pickas & Co. v. C.R. Jahn Co.*, 7 Ill. 2d 393, 396, 131 N.E.2d 100, 102 (1955). The conflicting provisions in the lease render the exculpatory provision equivocal and unclear.

The provision in the third section of the lease plainly states that the lessors will procure insurance to cover losses arising from the condition of the premises and structures and that the tenant can, at her option, purchase insurance to cover her personal property. This provision comports with the parties' intent and reasonable expectations that the lessors would maintain the building and the structures in good repair and in a safe condition and that any modifications, repairs, and maintenance to the premises would only be performed by the lessors or with the written consent of the lessors.

If the lessor has communicated to the tenant an express or implied

agreement to maintain insurance on the leased premises, absent a compelling provision to the contrary, the court can conclude that it was reasonably expected that the lessor would look only to his insurance policy, and not to the tenant, to cover a loss and for indemnification. *Continental Casualty Co. v. Polk Brothers, Inc.*, 120 Ill. App. 3d 395, 402, 457 N.E.2d 1271, 1276 (1983). Where, as here, the lease manifests the parties' reasonable expectations that the lessors will procure insurance and that the lessors will look to that insurance to cover losses arising from the negligent maintenance of or the unsafe conditions in the leased premises and structures, the lease confers to the tenant the status and benefits of a coinsured under the Shelter policy. *Dix Mutual Insurance Co. v. LaFramboise*, 149 Ill. 2d 314, 320-22, 597 N.E.2d 622, 625-26 (1992); *Polk Brothers, Inc.*, 120 Ill. App. 3d at 402, 457 N.E.2d at 1276. The threshold allegation in the main complaint and the third-party complaint is the negligent maintenance of the exterior stairway in an unsafe condition. That the Shelter policy covers this type of claim is not in dispute.

After reviewing the Shelter policy, the allegations in the underlying complaint, and the allegations in the third-party complaint, including the lease attached thereto and incorporated therein, I conclude that the underlying complaints allege facts within the policy coverage, that the lease manifests the parties' reasonable expectations and intent that the lessors would procure liability insurance and that they would look to that insurance to cover the alleged losses for the mutual benefit of the lessor and the tenant, and that Angelia Hacker is deemed a coinsured whom Shelter has a duty to defend.

Accordingly, I would affirm the judgment of the circuit court.