# Illinois Official Reports

## Appellate Court

***Sheckler v. Auto-Owners Insurance Co.*, 2021 IL App (3d) 190500**

| | |
|---|---|
| Appellate Court Caption | MONROE SHECKLER and DOROTHY SHECKLER, Plaintiffs-Appellants, v. AUTO-OWNERS INSURANCE COMPANY, RONALD McINTOSH, and WAYNE WORKMAN, Defendants (Auto-Owners Insurance Company, Defendant-Appellee). |
| District & No. | Third District<br>No. 3-19-0500 |
| Filed<br>Rehearing denied | October 22, 2021<br>December 7, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 18-MR-149; the Hon. Michael D. Risinger, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Mark E. Wertz, of Law Office of Mark Wertz, P.C., of Pekin, and John W. Robertson, of Statham & Long, LLC, of Galesburg, for appellants.<br><br>Peter J. Wenker and Brian T. Fairfield, of Brooks Law Firm, P.C., of Rock Island, for appellee. |

Panel        JUSTICE SCHMIDT delivered the judgment of the court.
Justice Holdridge specially concurred, with opinion.
Presiding Justice McDade dissented, with opinion.

**OPINION**

¶ 1      In this insurance coverage dispute, we must decide whether an insurer's duty to defend extends to the tenants of the insured property against a third-party negligence contribution claim when the tenants are not identified as persons insured under the policy. We hold that the duty to defend does extend to the tenants under these specific circumstances.

¶ 2                           I. BACKGROUND

¶ 3      Monroe[1] and Dorothy Sheckler rented an apartment in Pekin, Illinois from Ronald McIntosh. Prior to renting the apartment to the Shecklers, McIntosh paid the annual premium on the insurance policy covering the apartment from amounts collected from his other rental properties. The lease agreement for the apartment explicitly provided that McIntosh "shall maintain fire and other hazard insurance on the premises only" and that the Shecklers would be "responsible for any insurance they desire on their possessions contained in the leased premises." An indemnification clause further exculpated McIntosh from any damages or injury occurring on the premises.

¶ 4      In compliance with the lease, McIntosh obtained an insurance policy from Auto-Owners Insurance Company (Auto-Owners), which provided replacement cost coverage, rental loss protection, and liability protection. The policy declarations listed McIntosh and his wife Rita Kay McIntosh as the only named insureds.

¶ 5      The rental apartment had a traditional gas stove and range. Under the lease, McIntosh was responsible for appliance maintenance and repairs. When the Shecklers notified him that the oven and a burner on the stove were not working, he placed a service call with Wayne Workman. Workman met with the Shecklers, removed the knob from the burner, but left to find additional replacement parts. The Shecklers began smelling gas and tried masking the odor with Febreze. The Febreze proved to be inadequate at obscuring the smell. Undeterred, Monroe Sheckler turned on the stove. The stove burst into flames setting the apartment ablaze. The apartment sustained severe fire damage.

¶ 6      Auto-Owners paid McIntosh's claim for the damage to the apartment and then filed a subrogation action in McIntosh's name against Workman to recoup payment for the fire damage. Auto-Owners alleged Workman's repair work was the proximate cause of the fire. Following depositions, and discussion with Auto-Owners, Workman filed a third-party complaint for contribution against the Shecklers. Workman's complaint alleged that the Shecklers were negligent for, among other reasons, failing to advise Workman that they smelled gas, trying to mask the odor with Febreze, and lighting the oven despite the strong odor of gas. The Shecklers tendered their defense against the contribution claim to Auto-Owners. After Auto-Owners twice refused to defend them, the Shecklers filed an independent

_____

[1]Monroe Sheckler died during this litigation.

declaratory judgment action in the circuit court naming Auto-Owners, Workman, and McIntosh as defendants. Workman filed an answer with a counterclaim against Auto-Owners seeking coverage for the Shecklers. Citing our supreme court's decision in *Dix Mutual Insurance Co. v. LaFrambroise*, 149 Ill. 2d 314 (1992), Workman argued the Shecklers were coinsured under the Auto-Owners policy. Ergo, Auto-Owners had a duty to defend them against the third-party contribution claim.

¶ 7 The parties filed cross-motions for summary judgment. On May 20, 2019, the circuit court held a hearing where the parties presented their arguments. On behalf of both himself and the Shecklers, Workman argued that the policy issued to McIntosh also covered the Shecklers for damages alleged in his third-party contribution suit, claiming that Auto-Owners' duties also included indemnification. The trial court stated the key issue as whether "as a matter of law *** tenants are always the co-insureds for insuring the [rental] property." The Shecklers contended that because McIntosh intended to use the rental payments to pay for the policy premium, they acquired coinsured status; Auto-Owners argued that the duty to defend had to be based on language of the policy. McIntosh presented an affidavit to the court averring that he never intended to provide liability coverage to the Shecklers.

¶ 8 On August 2, 2019, the circuit court ruled on the key issue as previously framed, stating:

> "I find that reading Dix carefully, that as it applies to this case, Auto Owners does not owe a duty to defend Sheckler. Sheckler is not being subrogated against. Sheckler is essentially being sued by the third party for negligence.
>
> Sheckler is not being sued for property damage, so I don't find that—and I'm not sure if that grants a summary judgment or denies a summary judgment. You guys need to figure that out for me based upon my notes here and what I'm, ruling."

On August 7, 2019, the court entered summary judgment in favor of Auto-Owners and against both the Shecklers and Workman.

¶ 9 On August 19, 2019, Workman filed a notice of appeal; on August 23, 2019, the Shecklers filed a separate notice of appeal. Upon the parties' request, this court entered an order consolidating those appeals on September 10, 2019. While this appeal was pending, a jury returned a verdict in favor of Workman in Auto-Owners' subrogation action against him. Workman subsequently filed a motion to voluntarily dismiss his appeal in this case, which we granted. We now address the Shecklers' appeal and reverse the circuit court's judgment.

¶ 10                                                    II. ANALYSIS

¶ 11 Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Internal quotation marks omitted.) *Bremer v. City of Rockford*, 2016 IL 119889, ¶ 20. When, as here, the parties file cross-motions for summary judgment, they agree that only questions of law are involved and invite the court to decide the issues based on the record. *Id.* Appellate review of summary judgment is *de novo*. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004).

¶ 12 The Shecklers argue that under *Dix*, 149 Ill. 2d 314, they are coinsured, as a matter of law, under the policy agreement executed by McIntosh and Auto-Owners. Because they are coinsured and thus indemnified, they could not be held liable for any damages to the insured

property. In addition, the Shecklers assert that Auto-Owners had a duty to defend them from Workman's third-party contribution claim arising from the fire damage, as there is no reasonable basis for differentiating between a situation where a claim is made directly against a coinsured and where a claim is being made for contribution against a coinsured.

¶ 13    Auto-Owners argues that the Shecklers are not coinsured under the fire policy because McIntosh paid the premium before receiving their rent. The insurance company also asserts that the language of the insurance policy controls in this situation, not the lease. Auto-Owners also contends that *Dix* is inapplicable in this case and, instead, this court should follow the holding of *Hacker v. Shelter Insurance Co.*, 388 Ill. App. 3d 386 (2009).

¶ 14    In *Dix*, the landlord maintained fire insurance on residential property leased to a tenant. *Dix*, 149 Ill. 2d at 317-18. The tenant, while removing exterior paint from the property with a power stripper, caused fire damage to the property. *Id.* at 318. The fire insurance company paid the landlord's claim for the fire damage, then in a subrogation claim sought to recoup payments from the tenant for negligently causing the fire damage. *Id.*

¶ 15    On appeal to the Illinois Supreme Court, the insurer argued that the tenant was liable for the negligently caused fire damage because the lease did not contain a provision expressly relieving the tenant of liability. *Id.* at 320. The court examined whether the insurance company had the right to subrogate against the tenant, noting that subrogation is an "equitable right and remedy which rests on the principle that substantial justice should be attained by placing ultimate responsibility for the loss upon the one against whom in good conscience it ought to fall." *Id.* at 319.

¶ 16    In rejecting the insurer's argument, the court found that "a tenant is generally liable for fire damage caused to the leased premises by his negligence" but that the parties to the lease may agree to exonerate the tenant from liability under the terms of the lease. *Id.* Examining the terms of the lease as a whole, the spirit of the agreement, and the reasonable expectations of the parties, the court found the parties intended to exculpate the tenant from negligently caused fire damage. *Id.* at 319-20. This conclusion rested on the finding that under the language of the lease, the tenant assumed the risk for his personal property while the landlord was exonerated from liability for damage to that personal property in the event of a fire. Absent from the lease was a provision addressing liability for damage to the premises in the event of a fire. *Id.* at 321-22.

¶ 17    Instead, the only language in the lease addressing the issue of fire damage provided: " '(E) The [t]enant will assume their [*sic*] own risk for their [*sic*] personal property and [l]andlord *** will not be responsible for fire, wind or water damage.' " *Id.* at 321.

¶ 18    Interpreting the language of the lease, the court inferred that the parties intended for each to be individually responsible for any fire damage to his own property. *Id.* at 321-22. Significantly, the lease expressly provided for damage to the tenant's personal property but failed to do so regarding the leased premises. *Id.* at 322. Buttressing this interpretation was the fact that the landlord obtained a fire insurance policy on the premises. Ultimately, the court found that the language of the lease did not intend to hold the tenant responsible for fire damage to the premises. *Id.*

¶ 19    The court further opined that it was "well settled" that an insurer may not subrogate against its own insured or any entity that has coinsured status under the policy. *Id.* at 323. Practical realities dictated that the cost of insurance was factored into the rent and that the tenant paid the premiums of the fire insurance. *Id.* By payment of rent, the tenant contributed toward the

payment of the insurance premium, thereby, gaining the status of coinsured. *Id.* The court then limited the application of its holding, narrowing its ruling to "the particular facts of this case." *Id.*

¶ 20    In sum, our supreme court found it would be inequitable to allow an insurance company to subrogate against the named insured's tenant based on "the provisions of the lease as a whole, the reasonable expectations of the parties, and the principles of equity and good conscience." *Id.*[2]

¶ 21    Initially, we dispose of Auto-Owners' argument that the Shecklers are not coinsured owing to the fact that McIntosh paid the premium for the insurance policy before the Shecklers moved into the apartment. The Shecklers have coined this argument the "rich landlord defense to coverage" and assert there is no reasonable basis for differentiating this situation from *Dix*.

¶ 22    We agree with the Shecklers. In *Dix*, the majority looked to *Cerny-Pickas & Co. v. C.R. Jahn Co.*, 7 Ill. 2d 393 (1955), reiterating:

> " ' "The ancient law has been acquiesced in, and consciously or unconsciously, the cost of insurance to the landlord, or the value of the risk enters into the amount of rent.' *** 'They necessarily consciously figured on the rentals to be paid by the tenant as the source of the fire insurance premiums and intended that the cost of insurance was to come from the tenants. In practical effect the tenant paid the cost of the fire insurance." ' " *Dix*, 149 Ill. 2d at 322-23 (quoting *Cerny-Pickas*, 7 Ill. 2d at 398).

After acknowledging this statement, the court found that under the facts of the case, the tenant gained status as coinsured by payment of rent. *Id.*

¶ 23    Justice Freeman, in his concurrence, disagreed that the payment of rent alone was sufficient for the tenant to attain the status of a coinsured. *Id.* at 325 (Freeman, J., concurring). Instead, Justice Freeman asserted the better reasoned approach required an examination of the landlord and tenant's agreement as to the allocation of the burden in obtaining insurance. *Id.*

¶ 24    In this case, whether it be from the proposition espoused by the majority in *Dix* or that from Justice Freeman in his concurrence, the Shecklers are coinsured under the fire policy. The Shecklers paid rent to McIntosh. As a practical reality, the rent amount also accounts for the amount paid for insurance and serves as reimbursement for the landlord. Further, the lease states McIntosh would obtain fire insurance on the premises while exculpating himself from liability for damage to the personal property of the tenants. Per *Dix*, and the facts of this case, the Shecklers are coinsured under the fire policy regardless of the policy language. See also

---

[2]As subsequent rulings in other courts make clear, there are generally three different approaches used across the country in addressing landlords' insurers' subrogation claims against negligent tenants:

"(1) the no-subrogation (or implied co-insured) approach (*i.e.*, the '*Sutton* rule'), in which, absent an express agreement to the contrary, a landlord's insurer is precluded from filing a subrogation claim against a negligent tenant because the tenant is presumed to be a co-insured under the landlord's insurance policy; (2) the pro-subrogation approach, in which, absent an express term to the contrary, a landlord's insurer is allowed to bring a subrogation claim against a negligent tenant; and (3) the case-by-case approach, in which courts determine the availability of subrogation based on the reasonable expectations of the parties under the facts of each case." (Internal quotation marks omitted.) *Hoosier Insurance Co. v. Riggs*, 92 N.E.3d 685, 688 (Ind. Ct. App. 2018); see also *Tri-Par Investments, L.L.C. v. Sousa*, 680 N.W.2d 190, 197-98 (Neb. 2004). *Dix* falls into the case-by-case approach category.

*Stein v. Yarnall-Todd Chevrolet, Inc.*, 41 Ill. 2d 32, 33-40 (1968); *American National Bank & Trust Co. v. Edgeworth*, 249 Ill. App. 3d 52, 54-56 (1993); *Towne Realty, Inc. v. Shaffer*, 331 Ill. App. 3d 531, 540 (2002); *Cincinnati Insurance Co. v. DuPlessis*, 364 Ill. App. 3d 984, 986-87 (2006); *Auto Owners Insurance Co. v. Callaghan*, 2011 IL App (3d) 100530, ¶ 11.

¶ 25    We now turn to the main argument presented for our consideration, whether Auto-Owners owes the Shecklers a duty to defend. Based on *Dix*, the insurer in this case could not sustain a subrogation action against the Shecklers. Counsel for Auto-Owners admitted as much during oral arguments. The question presented here though is whether an equitable extension of *Dix* under these particular facts requires Auto-Owners to defend the Shecklers against the contribution claim. We answer that question in the affirmative. An examination of *Dix* leads to the inescapable conclusion that we must find Auto-Owners owes a duty to defend in this case as an equitable extension of *Dix* in order to prevent a subversion of its holding.

¶ 26    Since at least August 1992, case law has put insurance companies operating in Illinois on notice that when issuing a fire policy for a rental property, given certain terms *in the lease*, the company is also insuring against the negligent acts of the tenants that result in fire damage to the structure. See *Dix*, 149 Ill. 2d at 323 ("Under the particular facts of this case, the tenant, by payment of rent, has contributed to the payment of the insurance premium, thereby gaining the status of co-insured under the insurance policy.").

¶ 27    This is a subrogation action grounded in equity. The dissent questions whether the case at bar concerns a subrogation action (*infra* ¶ 57), but counsel for Auto-Owners, the Shecklers, and Workman acknowledged as much during oral arguments. Absent Auto-Owners' subrogation action, the Shecklers would not face the contribution claim, which is also equitable in nature. See *Antonicelli v. Rodriguez*, 2018 IL 121943, ¶ 13. In this subrogation action, the insurer is attempting to recoup payments made under the landlord's fire policy. The lease explicitly tells the Shecklers that McIntosh will insure the premises against fire damage, ergo, the tenants need not obtain the same insurance for the leased premises.

¶ 28    There was only an implication in *Dix* that the landlord would supply fire insurance, while exonerating himself from damage to personal property in the event of a fire. Here, the lease explicitly states that McIntosh "shall maintain fire and other hazard insurance on the premises only" and that the Shecklers would be "responsible for any insurance they desire on their possessions contained in the leased premises." The reasonable expectations of the parties to the lease were that the landlord would look to the policy for fire damage to the premises.

¶ 29    In light of *Dix* and the terms of the lease, it would be an absurd outcome if the Shecklers are held liable for fire damage to the premises based on a claim grounded in equity to recover payments under a policy that they are coinsured. See *Dix*, 149 Ill. 2d at 323 ("Both the landlord and tenant intended that the policy would cover any fire damage to the premises no matter who caused it, and to conclude otherwise would defeat the reasonable expectations of the parties."); see also *Continental Casualty Co. v. Polk Brothers, Inc.*, 120 Ill. App. 3d 395, 401-02 (1983) (finding that where the lease terms expressly or impliedly indicate the landlord is to obtain fire insurance, the tenant will normally not be held liable for fire damage caused by his or her own negligence, unless the parties' intent is clearly to the contrary). This outcome is particularly absurd considering that if the insurance company had attempted to directly subrogate against the Shecklers, no recovery would be available as counsel conceded.

¶ 30    Absent our finding of a duty to defend, the result of these circumstances is such that in the event of a favorable verdict for Auto-Owners in the subrogation action followed by equitable

apportionment of damages, Auto-Owners would likely recoup the majority of its payment for fire damage to the structure from a coinsured. Contextually, without the finding of a duty to defend there would be no duty to indemnify. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398 (1993). This result is entirely inequitable and in contravention of the principles laid out in *Dix*.

¶ 31    This is especially true on these facts. It is apparent that all of the blame for the fire rests with the Shecklers. Smelling gas, Monroe Sheckler thought it prudent to light the stove. Kaboom! When Auto-Owners filed its subrogation complaint against Workman, it was obvious that Workman would third-party in the Shecklers. The result might be different if Workman had any real exposure in this case. However, such is not the case here. Since it was clear that the Shecklers were coinsured with respect to fire damage to the structure, they would see no need to buy insurance to cover defense costs in the event they were sued for fire damage to the building. Again, it is hard to imagine any reasonable lawyer not knowing that a suit against Workman would result in Workman filing a third-party action against the Shecklers.

¶ 32    Prior to trial in the subrogation case, Workman filed a motion to amend his answer in order to include a contribution claim against the Shecklers. Workman proposed that Auto-Owners take a damage reduction in lieu of the contribution claim against the Shecklers. Auto-Owners declined the offer to take a damage reduction, instead consenting to Workman's motion to amend and the contribution claim against the Shecklers in an agreed order. This appears to be an attempt by the insurance company to accomplish through the backdoor what it is barred from accomplishing through the front—recovering from a coinsured in a subrogation action.

¶ 33    Adding insult to injury, the Shecklers have to pay costs and attorney fees to defend themselves in a suit initially brought by their insurer to recover damages under a policy which they are coinsureds. Again, this defeats the parties' reasonable expectations under the lease and turns equity on its head. See *Dix*, 149 Ill. 2d at 323. Finding that Auto-Owners has a duty to defend its coinsured is the only reasonable mitigation against this absurdity under these facts.

¶ 34    Auto-Owners points to the indemnification clause in the lease arguing that the Shecklers agreed to hold McIntosh harmless from any claims for damage *no matter how caused*. We fail to see how this clause defeats the Shecklers' argument. In fact, the clause only stands to strengthen their argument as it further shows McIntosh's attempt to exempt himself from liability in the event of damage to a tenant's personal property. The clause bars the recovery of compensation from loss by the Shecklers against McIntosh for damage or injury to themselves, any other person, or to any of their property upon the premises.

¶ 35    The Shecklers are not seeking compensation from McIntosh, nor was the damage in the subrogation suit to the tenant, another individual other than McIntosh, or the tenant's personal property. This simply cannot be emphasized enough; the damage in this case is *fire damage* to the rental property. The indemnification clause offers Auto-Owners no relief.

¶ 36    Auto-Owners, as well as the dissent, relies on *Hacker*, 388 Ill. App. 3d at 388, to support the assertion there is no duty to defend the Shecklers. While *Hacker* also dealt with an insurer's duty to defend and the tenant in that case similarly relied on *Dix*, the facts are in stark contrast to this case, and *Dix*.

¶ 37    In *Hacker*, the injury complained of resulted from a guest's fall down a flight of stairs, not fire damage to the structure. *Id.* at 388-89. The tenant in that case argued she was a coinsured

under the landlord's liability policy, not the fire policy. *Id.* at 392. The only similarity between this case and *Hacker* is that the tenant was third-partied into the suit via a contribution claim.

¶ 38 This case does not involve damages resulting from a fall down a flight of stairs or more specifically an injury to a third party. The injury at issue is the result of fire damage to the leased premises. The Shecklers are coinsured under the landlord's fire policy for the leased premises. It is inequitable to find that there is no duty to defend in this case in light of our supreme court's previous ruling. On the facts of this case, finding that the insurer has a duty to defend its coinsured is a natural and necessary extension of *Dix* to prevent a subversion of its ruling.

¶ 39 In the alternative, Auto-Owners argues that even if we expand the holding of *Dix*—which we do—Auto-Owners has no duty to defend or indemnify the Shecklers even if they are coinsured because of the plain language of the policy. This argument is unavailing. We assume our supreme court meant what it said in *Dix*: a tenant is a coinsured with respect to fire damage to the insured premises given certain circumstances that are present here. Since 1992 insurance companies insuring rental properties in this state know that a tenant is an implied coinsured with respect to fire damage to the insured premises.

¶ 40 If a tenant is a coinsured, then the insurer owes that coinsured a duty to defend and indemnify the tenant with respect to a claim for negligently caused fire damage to the insured premises. To hold otherwise would be contrary to the accepted understanding of an insurer's duty to its insured or coinsured.

¶ 41 So, to make a long story even longer, this is the bottom line. In situations such as this, the insurance company owes its coinsured not just a duty to refrain from suing it but also a duty to defend and, if appropriate, indemnify when someone else sues the coinsured to recover for fire damage to the insured structure.

¶ 42 Imagine, if you will, that McIntosh decided not to turn this claim into the insurance company but, rather, sue his tenants. It seems clear in that event the Shecklers could tender the suit to Auto-Owners to adjust and pay the claim or defend the lawsuit. As *Dix* makes clear with respect to fire damage to the premises, the Shecklers were coinsured.

¶ 43 Accordingly, we reverse the lower court's grant of summary judgment and remand for the court to enter summary judgment in favor of the Shecklers and for a determination of costs and attorney fees owed to the Shecklers.

¶ 44                                III. CONCLUSION

¶ 45 For the foregoing reasons, we reverse the judgment of the circuit court of Tazewell County and remand with directions.

¶ 46 Reversed and remanded with directions.

¶ 47 JUSTICE HOLDRIDGE, specially concurring:

¶ 48 I agree that an equitable extension of *Dix* under the facts of this case requires Auto-Owners to defend the Shecklers against the contribution claim. However, I disagree with *Dix* for the reasons set forth in Justice Heiple's dissent. *Dix*, 149 Ill. 2d at 326-30 (Heiple, J., dissenting).

¶ 49    PRESIDING JUSTICE McDADE, dissenting:

¶ 50    The majority holds that, under *Dix* and in the specific circumstances of this case, Auto-Owners owes the Shecklers a duty to defend regardless of the policy language. I disagree and respectfully dissent. The majority's conclusion and holding are premised on a reading of *Dix* that goes well beyond the case's narrow holding and are, therefore, misplaced. In fact, *Dix* has nothing to do with the issue before us.

¶ 51    In *Dix*, the insurance company brought a subrogation claim against the tenant of an insured property to recover the payment made to the landlord on his policy. *Dix*, 149 Ill. 2d at 317. The court stated the legal principle at issue in that case as follows:

> "One who asserts a right of subrogation must step into the shoes of, or be substituted for, the one whose claim or debt he has paid and can only enforce those rights which the latter could enforce. [Citation.] Consequently, in the case at bar, the insurance company may assert a right of subrogation against the tenant for the fire damage if: (1) the landlord could maintain a cause of action against the tenant and (2) it would be equitable to allow the insurance company to enforce a right of subrogation against the tenant." *Id.* at 319.

I find that there are three aspects included within the *Dix* opinion that implicate its applicability to the instant case.

¶ 52    First, the court reaffirmed the traditional common law rule that a "tenant is generally liable for fire damage caused to the leased premises by his negligence" unless the lease, when construed as whole, reveals that the parties "intended to exculpate the tenant" from this responsibility. *Id.* It then found that the lease, when read as a whole, did "not reflect any intent that *** the tenant would be responsible for any fire damage to the [property]." *Id.* at 321. It also noted that this lack of intent was "supported by the landlord's conduct in taking out a fire insurance policy to cover the leased premises." *Id.* at 322. Having found the landlord could not sue the tenant under the lease and the first prong satisfied, the court moved to the second prong—whether allowing the insurer to subrogate the tenant would be equitable. Its discussion encompasses the two remaining matters that speak to *Dix*'s applicability to the instant case.

¶ 53    Second, relying on its own "ancient law" that landlords "intended that the cost of insurance was to come from the tenants," the court found that "[i]*n practical effect* the tenant paid the cost of the fire insurance." (Emphasis added and internal quotation marks omitted.) *Cerny-Pickas*, 7 Ill. 2d at 398.

¶ 54    Third, the court held that "an insurer may not subrogate against its own insured *or any person or entity who has the status of a co-insured under the insurance policy*." (Emphasis added.) *Dix*, 149 Ill. 2d at 323 (citing *Reich v. Tharp*, 167 Ill. App. 3d 496, 501 (1987)). The court concluded that, under *Dix*'s "particular facts ***, the tenant, by payment of rent, has contributed to the payment of the insurance premium, thereby gaining *the status of* co-insured under the insurance policy." (Emphasis added.) *Id.* Stated differently, the *Dix* court found the tenant had the status of a coinsured not as a matter of law but as a construction of equity because he was deemed to have paid part of the premium. *Id.* Relying on this judicial fiction, the *Dix* court held that the insurance company could not subrogate against the tenant. *Id.*

¶ 55    The *Dix* court expressly limited its holding to "the particular facts of [the] case" before it, which included the lease's provision that the tenant would not be liable for any fire damage and the assumption that a portion of the rent would be used to purchase fire insurance. *Id.*; see

also *ESL Delivery Services Co. v. Delivery Network, Inc.*, 384 Ill. App. 3d 451, 456 (2008) ("The language of the *Dix* decision limits its application."). There is nothing in the *Dix* court's reasoning that asserts a general rule that whenever tenants pay rent and their landlords insure the leased premises that the tenants are automatically coinsured under the insurance policy as a matter of law. It is the concurrence and the dissent that announced and then attempted to counter a far broader result than the one the majority had reached, suggesting the existence of the more expansive interpretation of the *Dix* decision on which the Shecklers—and the majority—rely. See *Dix*, 149 Ill. 2d at 324-25 (Freeman, J., concurring); *id.* at 326 (Heiple, J., dissenting). The *Dix* majority reaffirmed the traditional common law rule holding tenants responsible for damages to the leased premises caused by their negligence. *Id.* at 319 (majority opinion). It also confirmed that this rule would govern the case unless the lease, when read as a whole, expressed the parties' contrary intent. *Id. Dix* merely established that where a case is grounded in the equitable doctrine of subrogation and even where the lease expresses the parties' intent to make the landlord solely responsible for fire damages to the premises, the tenant may be treated as a coinsured under the landlord's fire insurance policy to defeat, on equitable grounds, the insurer's attempt to recoup from the tenant the payments it made as the landlord's insurer. *Id.* at 323; see also *Callaghan*, 2011 IL App (3d) 100530, ¶ 23 (Holdridge, J., dissenting).

¶ 56    Moreover, even if *Dix* had announced a new and different general rule regarding the status of tenants *vis-à-vis* their landlords' insurance policies, the decision expressly limited its application to the equitable right of subrogation. *Dix*, 149 Ill. 2d at 323. It offers no authorization to apply such a rule when determining an insurer's duties to defend or to indemnify. Whether Auto-Owners has a duty to defend is the specific issue in the instant case, and it presents a question of law, not equity, to be answered based on the specific language of the insurance contract, not the lease. *Dix* does not apply to inform that decision. In other words, *Dix* has nothing to do with this case.

¶ 57    The majority asserts that the case before us "is a subrogation action grounded in equity," contending that "Auto-Owners paid McIntosh's claim for the damage to the apartment and then filed a subrogation action in McIntosh's name against Workman to recoup payment for the fire damage." *Supra* ¶¶ 6, 27. However, the record suggests the majority misinterprets the nature of the case before us. I am, therefore, not as sure as my fellow panelists that this is a subrogation case. And, indeed, the trial court found that it was not. At the hearing on the motion for summary judgment, the court asked the parties to set out the uncontroverted facts and Workman's attorney asserted that McIntosh had brought the claim against Workman as a subrogation action on behalf of Auto-Owners. McIntosh's attorney disagreed, stating the action was brought as an action for damages to recover "the deductible on the property claim," an amount paid by McIntosh, not Auto-Owners. The complaint in the underlying case (McIntosh v. Workman, No. 17-L-49 (Cir. Ct. Tazewell County)) has not been included in the record on appeal, leaving nothing in the record other than Workman's disputed allegation that supports the majority's finding that McIntosh filed an action for subrogation on behalf of Auto-Owners.

¶ 58    The *Dix* court also inferred a coinsured status for the tenant based on a *presumption* that the landlord intended to use a portion of his tenant's rent to pay the premium for the property damage insurance. Based on the facts of this case, which are significantly different in this regard from those of *Dix*, such an inference would be totally unwarranted. Here, Mcintosh purchased the policy and paid the entire premium *prior to* leasing the property to the Shecklers.

- 10 -

There is no rational basis under the specific facts of this case for an inference that the Shecklers should be deemed coinsured on McIntosh's policy. For the foregoing reasons, there is no basis for implying a duty of Auto-Owners created by *Dix* to either defend or indemnify them.

¶ 59    "There is neither a rule of law nor a principle of equity that requires the landlord's liability insurance company to defend a tenant against third-party liability claims when the terms of the policy do not require the insurance company to do so." *Hacker*, 388 Ill. App. 3d at 394.

"It is well established that, in a declaratory judgment action such as the case at bar, where the issue is whether the insurer has a contractual duty to defend pursuant to an insurance policy, a court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy." *Pekin Insurance Co. v. United Contractors Midwest, Inc.*, 2013 IL App (3d) 120803, ¶ 21 (citing *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010)).

If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises. *Id.*

¶ 60    In *Hacker*, the appellate court examined, as we are asked do here, whether a policy agreement between an insurer and a landlord created for the insurer "a duty to defend a tenant in a suit brought by a third party seeking damages for injuries allegedly caused by the tenant's negligence." *Hacker*, 388 Ill. App. 3d at 387. The *Hacker* court ruled that, in such circumstance, the *Dix* decision was distinguishable and inapplicable. *Id.* at 389. First, although crucial in limiting an insurance company's right to subrogate against a tenant, the *Hacker* court found the "*Dix* court's analysis of the equities of subrogation [was] not relevant in determining an insurance company's duty to defend." *Id.* at 391. And second, unlike in subrogation claims by an insurer, "[a] tenant *** cannot reasonably expect to be considered an insured under a landlord's liability insurance, particularly when there is no evidence of that intent in the parties' lease agreement or in the language of the insurance policy." *Id.* at 392-93. Focusing on a very practical consequence, the court concluded:

"To hold that a tenant is an additional insured under her landlord's liability insurance as a matter of law would require owners of large multiunit leased structures to secure adequate liability insurance not only for themselves but for perhaps hundreds or thousands of tenants, depending on the size of the building. The premium for that liability insurance coverage would likely be cost-prohibitive considering the magnitude of the potential risk covered by the policy. *Dix* is limited to 'the particular facts of [that] case' ***. " *Id.* at 393.

¶ 61    Like the *Hacker* court, I find nothing in the insurance policy or the lease agreement evidencing the parties' intent to extend McIntosh's liability coverage to the Shecklers. The Shecklers are not named in the policy declaration, which only names McIntosh and his wife, nor do they fit within the definition of an "insured" for liability coverage. Moreover, under the lease agreement the parties agreed that McIntosh was not liable to the Shecklers for any damage or injuries. The agreement required each party to cover his own property against damages and makes no reference to extending protection from McIntosh to the Shecklers or vice versa.

¶ 62    The majority accepts Workman's contention that *Dix* applies because McIntosh filed the complaint against him because he knew he could not bring the claim against the Shecklers under *Dix*. This contention is unpersuasive. First, it is at least as likely that McIntosh did not sue the Shecklers because he knew the lease, which was prepared by or for him, provided no

legal basis for such an action. Moreover, whether McIntosh could not have sued the Shecklers directly in the negligence complaint is irrelevant to our analysis. See *id.* at 389 ("This analysis requires us to construe the language contained in the insurance policy.").

¶ 63　　　I conclude, as the appellate court did in *Hacker*, that an insurer's duty to defend does not extend to the tenants of the insured property against a third-party negligence contribution claim when the tenants are not identified—or identifiable—as persons insured under the policy. *Id.* at 394. "Liability to a third party must affirmatively appear from the contract's language and from the circumstances surrounding the parties at the time of its execution ***." (Internal quotation marks omitted.) *Id.* There is nothing in either the lease agreement or the insurance policy that supports the imposition of a duty on Auto-Owners to defend the Shecklers.