**2022 IL 128012**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 128012)

MONROE SHECKLER *et al.*, Appellees, v. AUTO-OWNERS
INSURANCE COMPANY, Appellant.

*Opinion filed November 28, 2022.*

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Anne M. Burke, Neville, Michael J. Burke,
Overstreet, and Carter concurred in the judgment and opinion.

**OPINION**

¶ 1   The issue presented in this appeal is whether an insurer's duty to defend or
indemnify extends to the tenants of an insured property against a third-party
negligence contribution claim when the tenants are not identified as persons insured
under the policy. The circuit court held that defendant, Auto-Owners Insurance
Company (Auto-Owners), owed no duty to defend or indemnify plaintiffs, Monroe

and Dorothy Sheckler, the tenants of the insured property, against a third-party contribution claim brought against them in Tazewell County case No. 17-L-49. The appellate court reversed and remanded, finding an equitable extension of *Dix Mutual Insurance Co. v. LaFramboise*, 149 Ill. 2d 314 (1992), under the facts of this case, required Auto-Owners to defend and, if appropriate, indemnify the Shecklers against the contribution claim. 2021 IL App (3d) 190500, ¶¶ 25, 41. Justice Holdridge specially concurred, writing separately to express his disagreement with *Dix* for the reasons set forth in Justice Heiple's dissent therein (*Dix*, 149 Ill. 2d at 326-30 (Heiple, J., dissenting)) but recognized *Dix* as controlling authority. 2021 IL App (3d) 190500, ¶ 48 (Holdridge, J., specially concurring). Presiding Justice McDade dissented, concluding "an insurer's duty to defend [or indemnify] does not extend to the tenants of the insured property against a third-party negligence contribution claim when the tenants are not identified—or identifiable—as persons insured under the policy." *Id.* ¶ 63 (McDade, P.J., dissenting). For the following reasons, we reverse the appellate court's judgment and affirm the judgment of the circuit court.

¶ 2                                    I. BACKGROUND

¶ 3                              A. Lease and Insurance Policy

¶ 4        On August 6, 2015, the Shecklers rented a residential property at 2205 Valentine Avenue in Pekin, Illinois, from Ronald McIntosh. McIntosh and the Shecklers entered into a lease agreement for the property that provided McIntosh "shall maintain fire and other hazard insurance on the premises only" and that the Shecklers "shall be responsible for any insurance they desire on their possessions contained in the leased premises." The lease also contained an indemnification clause, which further exculpated McIntosh from any damages or injury occurring on the premises.

¶ 5        In compliance with the lease, McIntosh obtained an insurance policy from Auto-Owners, which included (1) first-party dwelling coverage and (2) third-party landlord liability coverage. The first-party dwelling coverage provided, in relevant part, coverage for fire damage to the premises. The third-party landlord liability coverage provided coverage for claims brought by third parties that the insured "becomes legally obligated to pay as damages because of or arising out of bodily

injury or property damage." The third-party landlord liability coverage also provided a duty to defend any claim or suit for damages covered by the policy. However, the third-party landlord liability coverage excluded from coverage "property damage to property occupied or used by an insured or rented to or in the care of, any insured." The policy declarations listed McIntosh and his wife as the only named insureds.

¶ 6        McIntosh stated he generally paid the property insurance for his multiple properties out of the rents received from the various renters. However, prior to renting the property to the Shecklers, McIntosh fully paid the annual premium on the insurance policy covering the property located at 2205 Valentine Avenue. McIntosh asserted no money received from the Shecklers was used to pay the annual premium on the insurance policy for the property located at 2205 Valentine Avenue.

¶ 7                                    B. Fire Incident

¶ 8        The rental property had a traditional gas stove and range. In late August 2015, the Shecklers notified McIntosh that the oven and burner on the gas stove were not working. McIntosh placed a service call with Wayne Workman, an appliance service technician. On August 26, 2015, Workman inspected the appliance and left the property to obtain a repair part. After Workman left, the Shecklers smelled gas. The Shecklers attempted to mask the odor by spraying a deodorizer before Monroe turned on the stove, which ignited, resulting in a fire that caused substantial property damage. As a result of the fire damage, McIntosh submitted a claim under the dwelling coverage provision of his insurance policy, and Auto-Owners paid McIntosh for damages incurred due to the fire and lost rental income.

¶ 9                                   C. Procedural History

¶ 10       After Auto-Owners paid McIntosh's claim, Auto-Owners filed a subrogation action in McIntosh's name against Workman in Tazewell County case No. 17-L-49, to recoup payment for the fire damage. Auto-Owners alleged Workman's repair work was the proximate cause of the fire. In response, Workman filed a third-party complaint for contribution against the Shecklers. The Shecklers tendered their

defense against the contribution claim to Auto-Owners. In letters dated January 26, 2018, and April 30, 2018, Auto-Owners declined to defend the Shecklers against the third-party contribution claim.

¶ 11    In July 2018, the Shecklers filed an amended complaint for declaratory judgment against Auto-Owners, McIntosh, and Workman in this case, Tazewell County case No. 18-MR-149, seeking a declaration of their rights under McIntosh's insurance policy and asserting Auto-Owners had a duty to defend and indemnify them against the third-party contribution claim in Tazewell County case No. 17-L-49. Workman filed an answer and a counterclaim against Auto-Owners seeking coverage for the Shecklers.

¶ 12    In January and April 2019, the parties filed cross-motions for summary judgment. Both Workman and the Shecklers cited this court's decision in *Dix*, 149 Ill. 2d 314, to assert the Shecklers were coinsured under the Auto-Owners insurance policy for liability claims arising from the damages to the insured rental property. Workman and the Shecklers therefore argued Auto-Owners had a duty to defend the Shecklers against the third-party contribution claim in Tazewell County case No. 17-L-49. Auto-Owners argued the Shecklers were not insured under the insurance policy and thus Auto-Owners did not have a duty to defend or indemnify the Shecklers against the third-party contribution claim in Tazewell County case No. 17-L-49. In May 2019, the circuit court held a hearing on the cross-motions for summary judgment.

¶ 13    On August 2, 2019, the circuit court found, under a careful reading of *Dix* as it applied to this case, "Auto[-]Owners does not owe a duty to defend Sheckler. Sheckler is not being subrogated against. Sheckler is essentially being sued by the third party for negligence." In an August 7, 2019, written order, the court entered summary judgment in favor of Auto-Owners and denied summary judgment for Workman and the Shecklers. The court stated, "Auto-Owners has no duty to defend or indemnify the Shecklers for the claims brought against the Shecklers in Tazewell County [c]ase [No.] 17-L-49."

¶ 14    The Shecklers and Workman filed separate notices of appeal, which the appellate court consolidated. While this case was pending in the appellate court, a jury in Tazewell County case No. 17-L-49 returned a verdict for Workman in Auto-

Owners' subrogation action against him. Workman subsequently filed a motion to voluntarily dismiss his appeal in this case, which the appellate court granted.

¶ 15 On the Shecklers' appeal, the Third District reversed and remanded. 2021 IL App (3d) 190500. The court found that, under *Dix* and based on the facts in this case, the Shecklers were coinsured under Auto-Owners' fire policy regardless of the policy language. *Id.* ¶ 24. The court based its finding on the fact that the Shecklers paid rent to McIntosh and reasoned that, as a practical reality, the rent amount accounted for the amount paid for insurance and served as reimbursement for the landlord. *Id.* Further, the court noted the lease stated McIntosh would obtain fire insurance on the premises while exculpating himself from liability for damage to the tenant's personal property. *Id.* Accordingly, the court determined, based on *Dix*, Auto-Owners could not sustain a subrogation action against the Shecklers. *Id.* ¶ 25.

¶ 16 While the appellate court determined Auto-Owners could not sustain a subrogation action against the Shecklers, it stated, "the question presented here though is whether an equitable extension of *Dix* under these particular facts requires Auto-Owners to defend the Shecklers against the contribution claim." *Id.* The court answered the question in the affirmative, finding Auto-Owners owed the Shecklers a duty to defend in this case. *Id.*

¶ 17 The appellate court determined this case involved a "subrogation action grounded in equity" and, absent Auto-Owners' subrogation action, the Shecklers would not face the contribution claim, which was also equitable in nature. *Id.* ¶ 27. The court reasoned, "[i]n light of *Dix* and the terms of the lease, it would be an absurd outcome if the Shecklers are held liable for fire damage to the premises based on a claim grounded in equity to recover payments under a policy that they are coinsured." *Id.* ¶ 29. Further, the court observed the Shecklers had to pay costs and attorney fees to defend themselves in a suit initially brought by their insurer to recover damages under a policy by which they were coinsureds. *Id.* ¶ 33. Ultimately, the court explained that a "[f]inding that Auto-Owners has a duty to defend its coinsured is the only reasonable mitigation against this absurdity under these facts." *Id.* The court found the facts in *Hacker v. Shelter Insurance Co.*, 388 Ill. App. 3d 386 (2009), distinguishable from this case and *Dix*. 2021 IL App (3d) 190500, ¶ 36. While the court acknowledged *Hacker* dealt with an insurer's duty to

- 5 -

defend a tenant against a third-party contribution claim, the court found the injury in *Hacker* resulted from a fall, and the tenant in that case argued she was coinsured under the landlord liability policy, not a fire policy. *Id.* ¶ 37.

¶ 18 The appellate court also rejected Auto-Owners' alternative argument that it had no duty to defend or indemnify the Shecklers even if they were coinsured because of the plain language of the insurance policy. *Id.* ¶ 39. The court stated, "Since 1992 insurance companies insuring rental properties in this state know that a tenant is an implied coinsured with respect to fire damage to the insured premises." *Id.* Accordingly, the court determined that, in situations like this, "the insurance company owes its coinsured not just a duty to refrain from suing it but also a duty to defend and, if appropriate, indemnify when someone else sues the coinsured to recover for fire damage to the insured structure." *Id.* ¶ 41.

¶ 19 Justice Holdridge specially concurred, expressing his disagreement with *Dix* for the reasons set forth in Justice Heiple's dissent therein but recognized *Dix* as controlling authority. *Id.* ¶ 48 (Holdridge, J., specially concurring).

¶ 20 Presiding Justice McDade dissented, stating, "The majority's conclusion and holding are premised on a reading of *Dix* that goes well beyond the case's narrow holding and are, therefore, misplaced. In fact, *Dix* has nothing to do with the issue before us." *Id.* ¶ 50 (McDade, P.J., dissenting). Presiding Justice McDade found this court in *Dix* "expressly limited its holding to 'the particular facts of [the] case' before it, which included the lease's provision that the tenant would not be liable for any fire damage and the assumption that a portion of the rent would be used to purchase fire insurance." *Id.* ¶ 55 (quoting *Dix*, 149 Ill. 2d at 323). Presiding Justice McDade determined nothing in this court's reasoning in *Dix* asserted "a general rule that whenever tenants pay rent and their landlords insure the leased premises that the tenants are automatically coinsured under the insurance policy as a matter of law." *Id.* Moreover, Presiding Justice McDade noted, here, McIntosh purchased the policy and paid the entire premium prior to leasing the property to the Shecklers. *Id.* ¶ 58.

¶ 21 Presiding Justice McDade asserted that, even if *Dix* had announced a new and different general rule, the decision expressly limited its application to the equitable right of subrogation and offers no authorization to apply such a rule when determining an insurer's duty to defend or indemnify. *Id.* ¶ 56. Presiding Justice

McDade stated, "Whether Auto-Owners has a duty to defend is the specific issue in the instant case, and it presents a question of law, not equity, to be answered based on the specific language of the insurance contract, not the lease." *Id.*

¶ 22    Ultimately, Presiding Justice McDade concluded, as the appellate court did in *Hacker*, 388 Ill. App. 3d at 394, that "an insurer's duty to defend does not extend to the tenants of the insured property against a third-party negligence contribution claim when the tenants are not identified—or identifiable—as persons insured under the policy." 2021 IL App (3d) 190500, ¶ 63. Presiding Justice McDade found nothing in either the lease agreement or the insurance policy supported the imposition that Auto-Owners owed a duty to defend to the Shecklers. *Id.*

¶ 23    This court allowed Auto-Owners' petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

¶ 24                              II. ANALYSIS

¶ 25    On appeal, Auto-Owners argues the appellate court erred by using McIntosh's first-party dwelling policy to create and impose on Auto-Owners a duty to defend the Shecklers in a third-party liability suit, where (1) the dwelling policy does not identify the tenants as covered insureds, (2) the dwelling policy does not offer third-party liability coverage, and (3) the landlord's actual third-party liability policy, which also does not identify the tenants as covered insureds, expressly excludes coverage for the allegations against the tenants. Auto-Owners asserts an insurer's duty to defend is a question of law governed by the plain language of the insurance policy. See *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 48 (1987) ("The insurer's duty to defend its insured arises from the undertaking to defend as stated in the contract of insurance."); *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 363 (2006) ("To determine whether an insurer has a duty to defend its insured from a lawsuit, a court must compare the facts alleged in the underlying complaint to the relevant provisions of the insurance policy.").

¶ 26    The Shecklers argue this court's holding in *Dix*, 149 Ill. 2d at 323, made the Shecklers coinsured under the terms of the lease for losses paid by Auto-Owners pursuant to its policy. Therefore, the Shecklers argue they are entitled to protection from personal liability arising from their negligence that caused the fire losses paid

by Auto-Owners. The Shecklers appear to assert an entitlement to some sort of hybrid relief. They indicate *Dix* made them additional coinsureds as a matter of law under the lease provisions and the policy at issue. However, they also assert the central issue on appeal is whether this court's decision in *Dix* is controlling and, like *Dix*, this is a subrogation case governed by equitable principles. See *id.* at 319.

¶ 27    Auto-Owners argues *Dix* and its equitable principles are irrelevant to an insurer's duty to defend. See *Hacker*, 388 Ill. App. 3d at 391 ("The *Dix* court's analysis of the equities of subrogation is not relevant in determining an insurance company's duty to defend.").

¶ 28                              A. Standard of Review

¶ 29    "When the parties file cross-motions for summary judgment, they agree that only questions of law are involved and invite the court to decide the issues based on the record." *State Farm Mutual Automobile Insurance Co. v. Elmore*, 2020 IL 125441, ¶ 19 (citing *Bremer v. City of Rockford*, 2016 IL 119889, ¶ 20). We review summary judgment orders *de novo*. *Id.*

¶ 30                          B. Duty to Defend or Indemnify

¶ 31    The issue presented in this matter is whether Auto-Owners owes a duty to defend or indemnify the Shecklers against a third-party contribution claim. "To determine whether an insurer has a duty to defend its insured from a lawsuit, a court must compare the facts alleged in the underlying complaint to the relevant provisions of the insurance policy." *Valley Forge Insurance Co.*, 223 Ill. 2d at 363. "The duty to indemnify arises only when the insured becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy." *Zurich Insurance Co.*, 118 Ill. 2d at 52.

¶ 32    Before we can determine whether Auto-Owners owes a duty to defend or indemnify the Shecklers against a third-party contribution claim, we must first determine whether the Shecklers were coinsured under the insurance policy. For purposes of this analysis, we view the insurance policy at issue to be one policy that includes multiple types of coverages.

¶ 33    Auto-Owners argues that, when looking at the plain language of the insurance policy, the Shecklers were not coinsureds where the policy only named McIntosh and his wife as covered insureds. The Shecklers acknowledge they were not named as covered insureds under the insurance policy. However, the Shecklers argue that, under an equitable extension of *Dix*, they are considered additional insureds as a matter of law under the lease provisions and the insurance policy. Thus, we review this court's analysis and holding in *Dix*.

¶ 34    In *Dix*, 149 Ill. 2d at 318, a tenant attempted to remove paint from the exterior of a leased residential property, causing fire damage and loss to the property. The landlord filed a claim with his insurance company pursuant to a fire insurance policy covering the leased premises. *Id.* The insurance company paid the landlord for the fire loss and subsequently filed a subrogation action against the tenant to recoup payment for the fire damage, alleging the tenant negligently caused the fire damage. *Id.* On appeal, this court addressed the issue of whether the insurance company had a right of subrogation against the tenant. *Id.*

¶ 35    The supreme court's analysis focused on the equitable nature of subrogation. *Id.* at 319. This court stated that, in order to assert a subrogation right, the insurance company must "step into the shoes of" its insured. *Id.* Specifically, the court determined,

"in the case at bar, the insurance company may assert a right of subrogation against the tenant for the fire damage if: (1) the landlord could maintain a cause of action against the tenant and (2) it would be equitable to allow the insurance company to enforce a right of subrogation against the tenant." *Id.*

¶ 36    In looking at whether the insurance company could maintain a subrogation action against the tenant, this court noted, "a tenant is generally liable for fire damage caused to the leased premises by his negligence," but the parties may agree to exonerate the tenant from liability under the terms of the lease. *Id.* The court looked to the terms of the lease " 'as a whole' " to conclude the parties did not intend for the tenant to be responsible for any fire damage to the leased premises. *Id.* at 320-21.

¶ 37    This court found that, under the terms of the lease, the tenant assumed the risk for his own personal property and, in the event of a fire, the landlord was exempt

from liability for damage to the tenant's personal property, but the lease was silent as to who was responsible for fire damage to the leased premises. *Id.* at 321-22. Thus, this court determined "the parties intended for each to be responsible for his own property." *Id.* at 322. This determination was further supported "by the landlord's conduct in taking out a fire insurance policy to cover the leased premises." *Id.* Accordingly, the intention of the parties indicated the tenant would not be liable for any fire damage to the premises and the landlord would look solely to the insurance policy as compensation for any fire damage to the premises. *Id.*

¶ 38 Moreover, this court cited the well-settled principle that "an insurer may not subrogate against its own insured or any person or entity who has the status of a co-insured under the insurance policy." *Id.* at 323. Thus, "[u]nder the particular facts of this case, the tenant, by payment of rent, has contributed to the payment of the insurance premium, thereby gaining the status of co-insured under the insurance policy." *Id.* Accordingly, this court held, "under the provisions of the lease as a whole, the reasonable expectations of the parties, and the principles of equity and good conscience, the insurance company cannot maintain a subrogation action against the tenant under the facts of this case." *Id.*

¶ 39 We agree with Presiding Justice McDade's dissent and find *Dix* is not applicable to this case. *Dix* is a subrogation case, which is governed by equitable principles. To "subrogate" means "[t]o substitute (a person) for another regarding a legal right or claim." Black's Law Dictionary 1726 (11th ed. 2019). When put into context, subrogation is defined as "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Id.* The issue in this case does not involve the equitable principles of subrogation. While the underlying claim in Tazewell County case No. 17-L-49 was a subrogation action filed by Auto-Owners in McIntosh's name against Workman to recoup payment for the fire damage to the premises, the underlying claim in Tazewell County case No. 17-L-49 against the Shecklers was a third-party contribution claim brought by Workman. Thus, this court's holding in *Dix* is not relevant here where the issue is not one of subrogation but whether Auto-Owners owes a duty to defend or indemnify the Shecklers against Workman's third-party contribution claim.

¶ 40    Moreover, *Dix* is not applicable to this case, where this court in *Dix* expressly limited its holding to "the particular facts of [that] case." 149 Ill. 2d at 323.

¶ 41    Having found *Dix* is not applicable, we look to the insurance policy to determine whether the Shecklers are coinsured for purposes of Auto-Owners' duty to defend or indemnify under the policy. "A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy." *Valley Forge Insurance Co.*, 223 Ill. 2d at 362. "If the words used in the policy, given their plain and ordinary meaning, are unambiguous, they must be applied as written." *Id.* at 363.

¶ 42    When looking at the plain language of the policy, we find the Shecklers are not covered insureds under the policy. The policy declarations list McIntosh and his wife as the only named insureds. Further, the separate coverages in the policy both define the term "insured." The dwelling coverage defines "insured" as "(a) you; (b) your relatives; and (c) any other person under the age of 21 residing with you who is in your care or the care of a relative." The landlord liability coverage defines "insured" as follows:

> "[W]hen you are designated in the Declarations as: [(a)] an individual, you; [(b)] a partnership or joint venture, you, your partners, your members and their spouses; [(c)] a limited liability company, you and your members. Your managers are also insureds, but only with respect to their duties as such; ([d)] an organization other than a partnership, joint venture or limited liability company, you, your executive officers and directors.
>
> Any person (other than your employee), or any organization while acting as your real estate manager is also an insured, but only with respect to their duties as such."

The Shecklers are not identified as persons insured under the policy, and they do not fall under either definition of "insured."

¶ 43    Moreover, we find the policy provisions make clear that only insureds are covered under the policy. The dwelling coverage provides coverage for fire damage to the covered premises and reimburses those insured for "accidental direct physical loss" to the property itself. The dwelling coverage relates entirely to the premises

and does not include a duty to defend or indemnify an insured against a third-party liability claim.

¶ 44    The landlord liability coverage provides a duty to defend and coverage for claims brought by third parties that "any insured becomes legally obligated to pay as damages because of or arising out of bodily injury or property damage." The policy covers only those "insured" from third-party liability claims. However, even an insured is not covered under this provision where the third-party landlord liability coverage excludes from coverage "property damage to property occupied or used by an insured or rented to or in the care of, any insured."

¶ 45    Accordingly, because the Shecklers are not covered insureds under the policy, they are not entitled to the coverage and protection afforded by the policy. Therefore, we conclude Auto-Owners does not owe a duty to defend or indemnify the Shecklers against a third-party contribution claim.

¶ 46                                III. CONCLUSION

¶ 47    For the foregoing reasons, we hold an insurer's duty to defend or indemnify does not extend to the tenants of an insured property against a third-party negligence contribution claim when the tenants are not identified as persons insured under the policy. We reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 48    Appellate court judgment reversed.

¶ 49    Circuit court judgment affirmed.