2023 IL App (1st) 221115-U

No. 1-22-1115

Order filed May 10, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ILLINOIS FARMERS INSURANCE COMPANY and FARMERS INSURANCE EXCHANGE, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| | ) | No. 20 CH 7484 |
| v. | ) ) | Honorable |
| KENNETH WALKER and CLAUDIA WALKER, | ) ) ) | Caroline K. Moreland, Judge, presiding. |
| Defendants-Appellants. | ) | |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice McBride and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1   *Held*:  We affirm the circuit court's grant of summary judgment in favor of plaintiff insurance providers, which denied coverage for damage to the defendants' vehicle and refused to defend and indemnify defendants in an underlying negligence lawsuit arising out of a collision involving the vehicle.

¶ 2   Defendants, Kenneth and Claudia Walker, a married couple, appeal the circuit court's grant

of summary judgment in favor of their automobile and homeowner's insurance providers, Illinois

Farmers Insurance Company and Farmers Insurance Exchange (collectively, Farmers).[1] In September 2020, Kenneth, who suffers from dementia and Alzheimer's disease, drove Claudia's vehicle without her knowledge or permission and struck another vehicle on I-55. The driver of that vehicle was injured and sued the Walkers for negligence in Will County. Farmers denied coverage for damage to Claudia's vehicle, refused to defend or indemnify the Walkers in the underlying Will County lawsuit, and sought declaratory judgment in the circuit court of Cook County that the denials of coverage were proper. The circuit court of Cook County granted summary judgment in favor of Farmers. On appeal, the Walkers argue that Claudia is entitled to coverage for the damage to her vehicle, defense, and indemnification. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4       On September 28, 2020, Kenneth drove Claudia's vehicle on I-55 in Will County and struck a vehicle driven by Bernabe Padilla head-on.[2] Padilla was injured and sued the Walkers in the circuit court of Will County, alleging that Kenneth caused the collision by negligently driving southbound in the northbound lanes of I-55. Padilla also alleged that Claudia negligently allowed Kenneth to drive her vehicle despite knowing that he was unable to drive safely, and that she failed to restrict his access to the vehicle.

¶ 5       The Walkers tendered Padilla's complaint to Farmers, seeking defense and indemnification in Padilla's lawsuit and coverage for damage to Claudia's vehicle. The Walkers sought coverage

---

[1] The insurance carriers' complaint states that Illinois Farmers Insurance Company is an Illinois corporation and Farmers Insurance Exchange is a California corporation. However, the complaint and all other filings in this case refer to the two corporations collectively as "Farmers," so we will do the same.

[2] Shortly after Kenneth struck Padilla, Padilla was allegedly rear-ended by an individual named Ryan Ellerbrock. Ellerbrock was named as a defendant in Padilla's underlying lawsuit and in the declaratory judgment action that gave rise to this appeal. However, neither Padilla nor Ellerbrock are parties to this appeal.

under two insurance policies: an automobile policy issued to Claudia by Illinois Farmers Insurance Company, and a homeowner's policy issued to both Kenneth and Claudia by Farmers Insurance Exchange. The automobile policy states that Farmers "will pay for loss to your insured car caused by collision" and, in a separate comprehensive coverage provision, "accidental means except collision." It also states that "[l]oss caused by *** theft or larceny *** is not deemed loss caused by collision." Claudia signed a named driver exclusion, effective December 17, 2018, which names Kenneth as the "Person(s) Restricted" and states that "all coverage afforded by this policy shall not, at any time on or after date shown, apply to the operation of any automobile by the person(s) named above. This policy will not provide coverage for any person who entrusts a vehicle to the person(s) named above."

¶ 6     The homeowner's policy insures Kenneth and Claudia and their home in Sauk Village. It states that Farmers will "pay those damages which an insured becomes legally obligated to pay because of *** bodily injury resulting from an occurrence." An "occurrence" is as "an accident *** which occurs during the policy period, and which results in bodily injury, property damage or personal injury during the policy period." The homeowner's policy also states that Farmers "will defend an insured against any suit seeking damages covered under" this section. The policy contains several paragraphs in its "Liability Exclusions" section. Paragraph 14 states that Farmers does "not cover bodily injury, property damage or personal injury arising from, during the course of or in connection with the ownership, maintenance, operation, use, occupancy, loading or unloading, moving or movement, or entry or exit of any *** motor vehicle." Paragraph 15 of the "Liability Exclusions" section is titled "Entrustment and negligent supervision – aircraft, motor vehicles, or watercraft." It states:

"[Farmers does] not cover bodily injury, property damage or personal injury arising from, during the course of or in connection with:

a. the entrustment of any aircraft, motor vehicle or watercraft to any person;

b. the negligent supervision of any person regarding the maintenance, operation, use, occupancy, loading or unloading, moving or movement, or entry or exit of any aircraft, motor vehicle or watercraft."

¶ 7       Farmers denied coverage for damage to Claudia's vehicle pursuant to the automobile policy's named driver exclusion. Farmers also denied coverage for Padilla's lawsuit under the homeowner's policy pursuant to both the motor vehicle exclusion of paragraph 14 and the entrustment/negligent supervision exclusion of paragraph 15. Farmers then sued the Walkers and Padilla in the circuit court of Cook County, seeking a declaratory judgment that its denials of coverage were proper.

¶ 8       Farmers moved for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2020)). Farmers argued that the automobile policy's named driver exclusion and the homeowner's policy's motor vehicle and entrustment/negligent supervision exclusions precluded coverage for damage to Claudia's vehicle and defense and indemnification in Padilla's lawsuit. In response, Kenneth conceded that he was not entitled to defense or indemnification under the automobile policy due to the named driver exclusion. However, Claudia argued that she was entitled to the fair market value of her vehicle because the automobile policy provided coverage for losses caused by theft, and Kenneth "essentially stole[ ]" her vehicle on September 28, 2020. Claudia also contended that some of Padilla's theories of liability against her did not allege negligent supervision or entrustment of her vehicle; rather, they

alleged that she did not properly restrict Kenneth's access to the vehicle. Therefore, Claudia argued, at least some of Padilla's claims did not fall under the homeowner's policy's entrustment/negligent supervision exclusion. Finally, Claudia contended that the homeowner's policy excluded claims for entrustment of her vehicle, but not *negligent* entrustment, which is what Padilla alleged.

¶ 9    Claudia's affidavit is attached to the Walker's summary judgment response.[3] She attests that, prior to the collision with Padilla's vehicle, Kenneth's neurologist diagnosed him with dementia and Alzheimer's disease and advised Claudia not to let him drive. Claudia took the keys to her vehicle from Kenneth, told him not to drive it, and removed him from the automobile policy as a covered driver. Claudia did not give Kenneth permission to drive her vehicle on the date of the collision and immediately called police when she realized that he took the vehicle. Kenneth was found unfit to stand trial in a Will County misdemeanor case arising out of the collision with Padilla's vehicle. A Will County circuit court order finding Kenneth unfit to stand trial is also attached to the Walkers' summary judgment response.

¶ 10    The circuit court granted summary judgment in favor of Farmers. The court concluded that (1) the automobile policy's named driver exclusion precluded coverage for any damages arising out of Kenneth's operation of Claudia's vehicle, including damage to the vehicle itself, (2) Farmers had no duty to defend or indemnify the Walkers under the automobile policy or the homeowner's

---

[3] Claudia's affidavit refers to the date of the collision on I-55 as September 20, 2020. Except for one line in Farmers' summary judgment reply, everything in the record indicates that the collision occurred on September 28, 2020. The parties' briefs do not suggest that there is a dispute about the date on which the collision occurred, so we infer that references to September 20, 2020, are simply typographical errors. There is no dispute that the incident occurred within the coverage period of the insurance policies at issue.

policy, and (3) neither policy covered Padilla's negligent entrustment and supervision claims against Claudia because they arose out of Kenneth's operation of the vehicle.

¶ 11    The Walkers timely appealed.

¶ 12                                    II. ANALYSIS

¶ 13    On appeal, the Walkers contend that we should reverse the circuit court's grant of summary judgment because Farmers must provide coverage for the damage to Claudia's vehicle and defend and indemnify her in Padilla's underlying lawsuit.

¶ 14    Summary judgment is warranted when the pleadings, admissions, depositions, and affidavits on file, viewed in the light most favorable to the nonmoving party, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020); *Thounsavath v. State Farm Mutual Automobile Insurance Co.*, 2018 IL 122558, ¶ 15. We review the circuit court's grant of summary judgment *de novo* (*Thounsavath*, 2018 IL 122558, ¶ 16), meaning that we perform the same analysis as the circuit court (*Galarza v. Direct Auto Insurance Co.*, 2022 IL App (1st) 211595, ¶ 33 (not yet released for publication and subject to revision or withdrawal)). We also review this matter *de novo* because it involves the interpretation of insurance policies, which is a question of law. See *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010).

¶ 15    A court's primary objective in interpreting the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 362 (2006). If the language of an insurance policy is clear and unambiguous, it must be enforced as written unless doing so would violate public policy. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391,

400 (2010). By contrast, if the terms of the policy are susceptible to more than one meaning, then they are ambiguous and must be construed strictly against the insurer. *Pekin Insurance Co.*, 237 Ill. 2d at 456. Provisions that limit or exclude coverage must be interpreted liberally in favor of the insured and against the insurer. *Id.* A court must construe the policy as a whole and account for the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *Id.*

¶ 16                                    A. Vehicle Coverage

¶ 17    The Walkers first contend that the automobile policy provides coverage for the damage that Claudia's vehicle sustained in this incident. The Walkers argue that the named driver exclusion excludes coverage for Kenneth driving only if Claudia entrusted her vehicle to him, and that Claudia did not entrust her vehicle to Kenneth. Rather, Kenneth essentially "stole" the vehicle by taking it without Claudia's knowledge or permission. The automobile policy covers losses resulting from theft, so, according to the Walkers, damage from Kenneth's "theft" of the vehicle is covered despite the named driver exclusion excluding him from all coverage.

¶ 18    A named driver exclusion eliminates all coverage if the person named in the exclusion operates the otherwise covered vehicle. *Mercury Indemnity Co. of Illinois v. Kim*, 358 Ill. App. 3d 1, 5 n. 2 (2005). Illinois law generally permits named driver exclusions. *American Access Casualty Co. v. Reyes*, 2013 IL 115601, ¶ 15; see also *St. Paul Fire & Marine Insurance Co. v. Smith*, 337 Ill. App. 3d 1054, 1062 (2003) (holding that a named driver exclusion in an automobile liability insurance policy does not categorically contravene Illinois public policy).

¶ 19    The automobile policy provides coverage for damage to Claudia's vehicle caused by "collision" and, separately, any "accidental means except collision." The comprehensive coverage

provision that provides coverage for loss by "accidental means except collision" states that loss due to theft is "not deemed loss caused by collision." We interpret this language to mean that loss caused by theft falls under coverage for loss caused by "accidental means." So, if someone stole Claudia's vehicle and caused loss, the automobile policy would cover that loss. However, the named driver exclusion states that "*all* coverage afforded by [the automobile] policy shall not, at any time on or after date shown, apply to the operation of any automobile" by Kenneth. (Emphasis added). This language is unambiguous and all-inclusive. It means that any loss caused by Kenneth driving any vehicle does not fall under any of the automobile policy's coverage provisions. Therefore, the automobile policy does not provide coverage for the damage to Claudia's vehicle that Kenneth caused by driving it in this incident.

¶ 20    The Walkers do not contend that the named driver exclusion is ambiguous or that it violates public policy. However, they argue that Kenneth's actions amounted to a "theft" of Claudia's vehicle, which falls under the automobile policy's comprehensive coverage provision, and that the named driver exclusion does not apply because Claudia did not entrust her vehicle to Kenneth. We disagree. The named driver exclusion consists of two sentences, which state:

> "It is agreed that all coverage afforded by this policy shall not, at any time on or after date shown, apply to the operation of any automobile by the person(s) named above [*i.e.*, Kenneth]. This policy will not provide coverage for any person who entrusts a vehicle to the person(s) named above."

The first sentence excludes from coverage any scenario in which Kenneth operates any automobile, regardless of whether anyone entrusted the automobile to him. The second sentence excludes from coverage any *person* who entrusts a vehicle to Kenneth. The entrustment of a

vehicle to Kenneth does not trigger the first sentence of the named driver exclusion and it is not required for the named driver exclusion to apply. There is no indication that Kenneth's "theft" of a vehicle can somehow negate the named driver exclusion and bring him back within the policy's coverage. The named driver exclusion unambiguously applies to this case to exclude Kenneth's operation of Claudia's vehicle on September 28, 2020, from coverage, regardless of whether he "stole" the vehicle. Moreover, everything in the record indicates that the intention of the contracting parties – Claudia and Farmers – was specifically *not* to provide automobile insurance for Kenneth because he would not be driving at all. Accordingly, we affirm the circuit court's grant of summary judgment with respect to the denial of coverage for damage to Claudia's vehicle.

¶ 21                    B. Duties to Defend and Indemnify

¶ 22    The Walkers also contend that, under the homeowner's policy, Farmers is obligated to defend and indemnify Claudia in Padilla's lawsuit. The Walkers concede that Kenneth "is not entitled to indemnification or a defense by Farmers to the Padilla Complaint under the automobile policy," and they do not argue that Kenneth is entitled to defense or indemnification under the homeowner's policy. Therefore, we will only address these duties with respect to Claudia.

¶ 23    " 'To determine whether an insurer has a duty to defend its insured from a lawsuit, a court must compare the facts alleged in the underlying complaint to the relevant provisions of the insurance policy.' " *Sheckler v. Auto-Owners Insurance Co.*, 2022 IL 128012, ¶ 31 (not yet released for publication and subject to revision or withdrawal) (quoting *Valley Forge Insurance Co.*, 223 Ill. 2d at 363). " 'If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises.' " *Sentry Insurance v. Continental Casualty Co.*, 2017 IL App (1st) 161785, ¶ 36 (quoting *Outboard Marine Corp. v.*

*Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992)). We must liberally construe the underlying complaint in favor of coverage. *Valley Forge Insurance Co.*, 223 Ill. 2d at 363. An insurer may only refuse to defend a lawsuit against its insured when it is clear that the underlying complaint fails to state facts that bring the case within, or potentially within, the policy's coverage. *Id.*

¶ 24    We begin by setting out the relevant portions of Padilla's complaint and the homeowner's policy. See *Sheckler*, 2022 IL 128012, ¶ 31. Padilla's complaint alleges one count of negligence against Claudia, which claims that, at all relevant times, the vehicle that Kenneth drove "was owned and/or controlled by" Claudia. Paragraph 25 of Padilla's complaint sets out six theories of negligence, alleging that Claudia (a) allowed Kenneth to operate her vehicle when she knew or should have known that he "lacked the requisite competence or skill to do so," (b) failed to restrict Kenneth's access to the vehicle, (c) failed to properly secure the keys to the vehicle to prevent Kenneth from obtaining them, (d) failed to adequately supervise Kenneth, (e) failed to timely report Kenneth and the vehicle as missing, and (f) failed to employ reasonable safeguards to prevent Kenneth from accessing the vehicle. All these theories allege that Claudia knew or should have known that Kenneth operating her vehicle posed an unreasonable risk of harm to others on the road, including Padilla.

¶ 25    The section of the homeowner's policy titled "Liability Coverage" states that Farmers "will defend an insured against any suit seeking damages covered under Coverage E (Personal Liability)." Coverage E states that Farmers "will pay those damages which an insured becomes legally obligated to pay because of" "bodily injury resulting from an occurrence," but does "not have any duty to defend or settle any lawsuit involving actual, alleged, threatened or declared

bodily injury or property damage not covered under this liability insurance." The policy contains two exclusionary provisions at issue: a motor vehicle exclusion in paragraph 14, and an entrustment/negligent supervision exclusion in paragraph 15. We address each exclusion in turn.

¶ 26                                    1. Motor Vehicle Exclusion

¶ 27    Padilla's complaint alleges that Kenneth was negligent in "operating," *i.e.*, driving, Claudia's vehicle. It also alleges that Claudia was negligent in supervising Kenneth and restricting his access to the vehicle. Paragraph 14 of the homeowner's policy, the motor vehicle exclusion, states that Farmers does "not cover bodily injury, property damage or personal injury arising from, during the course of or in connection with the ownership, maintenance, operation, use, occupancy, loading or unloading, moving or movement, or entry or exit of any *** motor vehicle." This language unambiguously precludes coverage for Kenneth's negligent driving of Claudia's vehicle. The Walkers do not contend otherwise.

¶ 28    The motor vehicle exclusion also precludes coverage for Padilla's claims regarding Claudia's allegedly negligent supervision of Kenneth and the vehicle. For a negligent supervision claim arising from an automobile accident to withstand a motor vehicle exclusion, the injury alleged must be "wholly independent of any negligent operation of the [motor vehicle]." (Internal quotations omitted.) *Northbrook Property & Casualty Co. v. Transportation Joint Agreement*, 194 Ill. 2d 96, 99 (2000); see also *Allstate Property and Casualty Insurance Co. v. Mahoney*, 2011 IL App (2d) 101279, ¶ 18.

¶ 29    Padilla alleges that Claudia negligently allowed Kenneth to use the vehicle, failed to restrict his access to the vehicle, failed to secure the keys to the vehicle, failed to report Kenneth and the vehicle missing, and failed to employ safeguards to prevent Kenneth from accessing the vehicle.

None of these allegations, standing alone, could have proximately caused Padilla's injuries. For example, if Kenneth obtained the keys to the vehicle due to Claudia's negligence, but merely sat in the vehicle while it was parked rather than driving it, then Padilla would have no claim against the Walkers. As the Walkers' reply brief acknowledges, "but for Kenneth Walker not being of sound mind and suffering from dementia and Alzheimer's disease, taking the vehicle, and causing a heart-breaking, tragic accident, there would be no lawsuit, no injuries, no claim." Padilla alleges no act of negligent supervision by Claudia that does not depend on Kenneth's negligence in driving her vehicle. Because the success of Padilla's negligent supervision claim against Claudia is premised on Kenneth's negligent operation of the vehicle, the motor vehicle exclusion precludes coverage. See *Allstate Insurance Co. v. Pruitt*, 177 Ill. App. 3d 407, 413 (1988) (in accident arising out of minor's use of motorbike, motor vehicle exclusion barred coverage for negligent supervision claim against father because father's liability was contingent on the minor's negligent operation of the motorbike).

¶ 30    The Walkers argue that the motor vehicle exclusion is "ambiguous" because it does not define how an injury "aris[es] from" or "in connection with" a motor vehicle. There is nothing ambiguous about the terms "arising from" or "in connection with" a motor vehicle incident in this context. Padilla was injured in a motor vehicle accident on I-55 that was directly caused by Kenneth's use of Claudia's vehicle. That is exactly what the motor vehicle exclusion excludes from coverage. Moreover, language is ambiguous when it is susceptible to multiple meanings (see *Pekin Insurance Co.*, 237 Ill. 2d at 456), but the Walkers do not explain what multiple meanings are possible in this case. Rather, they contend that all of Padilla's allegations against Claudia "involve the keys to the vehicle" instead of the vehicle itself and are not subject to the motor

vehicle exclusion at all. That is not an accurate description of Padilla's complaint. Paragraph 25(c) of the complaint involves the vehicle keys, but Padilla's five other theories of liability against Claudia do not. Accordingly, we affirm the circuit court's grant of summary judgment on the grounds that the homeowner's policy's motor vehicle exclusion precludes defense of Claudia for Padilla's claims.

¶ 31                    2. Entrustment and Negligent Supervision Exclusion

¶ 32    The Walkers also contend that Padilla's claims against Claudia are not subject to the entrustment/negligent supervision exclusion of paragraph 15 of the homeowner's policy. Paragraph 15 addresses "[e]ntrustment and negligent supervision" of motor vehicles and states that Farmers does "not cover bodily injury" or "personal injury arising from, during the course of or in connection with" "the negligent supervision of any person regarding the" "use," "operation," or "entry or exit of any" "motor vehicle." That is a description of Padilla's claims against Claudia. Padilla's complaint alleges that Claudia *"[f]ailed to provide adequate supervision* of" Kenneth "when she knew, or should have known, that such supervision was required to prevent an unreasonable risk of harm to others, including" Padilla. (Emphasis added.). Paragraph 15 unambiguously excludes such a negligent supervision claim.

¶ 33    The Walkers argue that four of Padilla's theories of liability against Claudia are not actually claims for "negligent entrustment" or "negligent supervision," so paragraph 15 does not exclude them from coverage. Specifically, the Walkers point to paragraphs 25(b), (c), (e), and (f) of Padilla's complaint, which respectively allege that Claudia failed to restrict Kenneth's access to the vehicle, secure the keys to the vehicle, report Kenneth and the vehicle missing, and employ reasonable safeguards to prevent Kenneth from accessing the vehicle. Even if these theories of

liability are not claims for negligent entrustment or supervision, they all depend upon Kenneth's use of the vehicle and resulting injury of Padilla. So, the motor vehicle exclusion precludes coverage for them for the reasons explained above, even if the entrustment/negligent supervision exclusion does not.

¶ 34    In the alternative, the Walkers contend that Padilla *does* allege negligent entrustment against Claudia, and that paragraph 15 of the homeowner's policy only excludes claims for "entrustment" and "negligent supervision," but not "negligent entrustment." This distinction is immaterial. Negligent supervision is "in essence the same theory" as negligent entrustment in this context, because "both involve negligence in relation to the motor vehicle." See *State Farm Fire & Casualty Co. v. Mann*, 172 Ill. App. 3d 86, 92 n. 1 (1988). The homeowner's policy unambiguously excludes claims for negligent supervision, so it excludes the equivalent theory of negligent entrustment as well. See *id.* We also note that Claudia's affidavit establishes that she did not entrust her vehicle to Kenneth negligently, intentionally, or otherwise.

¶ 35    Finally, because Farmers has no duty to defend Claudia in Padilla's underlying lawsuit, we also find that Farmers has no duty to indemnify her. See *West Bend Mutual Insurance Co. v. Rosemont Exposition Services, Inc.*, 378 Ill. App. 3d 478, 486 (2007) (explaining that, because the duty to defend is broader than the duty to indemnify, where a court " 'properly holds that an insurer has no duty to defend, the court may also hold that the insurer has no duty to indemnify.' ") (quoting *State Farm Fire & Casualty Co. v. Hatherly*, 250 Ill. App. 3d 333, 336 (1993)). Accordingly, we affirm the circuit court's grant of summary judgment finding that Farmers does not owe Claudia a duty of defense or indemnification in Padilla's underlying lawsuit.

¶ 36                                III. CONCLUSION

¶ 37     For the foregoing reasons, we affirm the circuit court's grant of summary judgment.

¶ 38     Affirmed.